Paul Copansky
724 Blue Spruce Drive
Danville California 94605
Telephone: (925) 736-8705
Email-userpndc@aol.com

Plaintiff in Pro-Per



**FILED**

APR 2 4 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

E-filing

## EMERGENCY MOTION UNDER CIRCUIT RULE 27-3
## IN THE UNITED STATES DISTRICT COURT FOR THE
## (*OAKLAND*) NORTHERN DISTRICT OF CALIFORNIA

C08-02145   EMC
ADR

| Paul Copansky **Plaintiff** | **PLAINTIFFS MOTION TO VOID ASSIGNMENT ORDER RENDER UPON DUE PROCESS VIOLATIONS AND FRAUDULENT ACTS BY DEFENDANTS** |
|---|---|
| Phil Linza, Robert Bartlett, Malcolm L. Picone , Bartlett, Leader-Picone & Young LLP Others to be named later. **Defendants** | **PAUL COPANSKY REQUESTS EMERGENCY RELIEF TODAY TO AVOID IN-REPAIRABLE HARM** |

GO 44 SEC. 11
NOTICE OF ASSIGNMENT
TO MAGISTRATE JUDGE SENT

1

## CIRCUIT RULE 27-3 CERTIFICATE

I, Paul Copansky, In Pro-Per, Complied With The Requirements Governing Emergency Motions, And Hereby Certify The Following Information In Accordance With Circuit Rule 27-3

**(I)** The telephone numbers and office addresses of the attorneys for the parties are as follows:

      Paul Copansky, Plaintiff
      724 Blue Spruce Drive
      Danville California 94605
      Telephone:   (925) 736-8705
      Email-  userpndc@aol.com

         **Plaintiff,** In Pro-Per

       Bartlett , Leader-Picone & Young L LP
       2201 Broadway, Suite 803
       Oakland, CA 94612
       Phone: (510)  444-2404
       Fax-    (510)  444-1291
       Robert Bartlett,
       Malcolm  Leader Picone

       **Attorneys**  for Defendant, Phil Linza

2

## 3-5.  JURISDICTIONAL STATEMENT

**(a) Jurisdiction..**

A judgement was entered against Paul Copansky and The Diamond Center Corporation at the Superior Court in Contra Costa County on 10-23-2002 and affirmed 12-30-2005 by California First Appellate District Court. The Remittitur was sent back to lower court and case completed after Paul Copansky motion to vacate the judgement was denied on 8-25-2006.

**1.** This Court's jurisdiction is invoked pursuant to 28 U.S.C. 1331. The U.S. District Courts have jurisdiction of all civil actions arising under the Constitution of the United States.

**2.** This Court has jurisdiction pursuant to District Courts have jurisdiction of any civil action pursuant to 28 U.S.C. § 1343 (a)(3) for redress of the deprivation, under color of State law or statute, of rights, privileges, or immunities secured by the United States Constitution

**3.** This court has jurisdiction, pursuant  to 42 U.S.C. § 1983 for deprivation of rights, privileges and immunities secured by the Second, Fourth, Fifth, and Fourteenth Amendments of  U.S. Constitution.

**4.** This Court's jurisdiction is invoked pursuant to California law an order or judgment rendered in violation of parties due process rights are void..

### (b) INTRA DISTRICT ASSIGNMENT

This action was filed in this court due to Defendants attorneys law offices are located in Oakland California. Plaintiff home is in Danville CA. and Defendant lives in Fairfield CA.

3

**Copansky Was Threaten After Giving Notice To Opposing Counsel**

Copansky gave notice to opposing counsel, Malcolm Picone January 28th, 2008, he would be filing an Ex-Parte Motion in Martinez Superior Court . Exhibit (**1**) is Picone January 28th 2008 email in response to Copansky notice. Paul:

" **Please read and take heed** of the attached letter. Simply put, There should be no more Ex-Parte applications concerning the assignment order. Otherwise, We will seek an order **Barring** You from Ever bringing an Ex-parte Application." Exhibit (**2**) is Bartlett, Leader-Picone & Young L LP Order prohibiting Copansky from seeking any further relief on an Ex-Parte basis.. Picone sent this to Copansky on January 29th as a warning, if he goes forward with Ex-Parte Application, then Picone will have Copansky Barred. Copansky was confused and intimated so he cancelled his Ex-Parte Hearing at 1:30 p.m. that day. Exhibit (3) is an email Copansky sent Picone on 2-4-08

**" Excerpts Of Copansky E-mail**

" Per our discussions a few days ago, I did say, you would be getting an email from me with-in the next hour that will let you know whether I decided to go forward with doing an ex parte application, or walk away. However, I decided to re-review the emails you sent me last week, before I made a final decision. After I finished my review, I decided to go forward. "

**Below is a recap of your January 29th email.**

**Paul,** "This email will confirm our conversation this morning at 10: a.m.. You gave me notice your ex parte application will not be made at 1:30 p.m. today, but will be made, if at all, tomorrow as you are still considering your options.  You promised to let me know, no later than Noon tomorrow, if you decided not to go ahead with the ex parte application. "

4

**RESPONSE: That was only Part of our conversation** .

Malcolm, "You omitted all the conversation that could harm your position.

**You** emailed copies of an Order to prohibit me from seeking any further relief on an Ex-Parte basis..You submitted your pleadings to Judge Bruiniers, oppose to the judge assigned to our case.  Your cover sheet stated, If you change your mind and want to call it off, please call me on my cell phone at 510-502-4323. I called you at 10: a.m.. January 29th and said, my call was in response to your cover sheet and opposition papers you sent me."

I asked what basis or authority did you used to select Judge Bruiniers, as the person to rule on your motion, oppose to the judge assigned to our case.. You said Judge Bruiniers was the trial judge and still involved in this case. " Perhaps you do have the right to use him, but by doing so is unconscionable. " You know this case has been in constant litigation for over 6 years and Judge Bruiniers repeatenly treated me with disrespect and hostility over those years.

**I told you,** my motion for relief will be automatically denied by Judge Bruiniers due to the fact I filed a lengthy motion to recuse him and claimed he committed gross misconduct offenses.

I am working on an Emergency Motion that will be filed at the Oakland district court today. " I will email you a copy in 2-3 hours" Picone immediately sent Copansky an Response on 2/4/2008

**Paul:**

" Since you are having trouble keeping the facts straight, I pasted the text of your attachment below. I am very disturbed by some of your comments.  I told you I put Judge Bruiniers name on the papers, because he was assigned to your case for all purposes.  Moreover, **Judge Bruiniers was the judge** who heard and ruled on your last Ex parte Motion." Your email today was the first time I ever heard of any attempt by you to recuse Judge Bruiniers."

Attached as Exhibit (4) is an email Copansky sent Picone February 8, 2008

**Malcolm,**

" I am going to file an emergency motion in Oakland District Court today. The legal points you raised in your opposition to my filing an emergency motion in Oakland on 2-4-2008 convince me to rethink my position. I have done that and believe you are wrong. My argument is about judgment creditor taking my exempt income and I want it back. Below, was your response you made before. Is that still your position?."

### Excerpt from your 2-4-2008 email

" The notion you can file something in federal court today and expect the court to take any action on your behalf **is ludicrous.** You are wasting my time, and ultimately your money, on an inappropriate ex parte application.

If, through some remarkable indulgence of your pro per status, the District Court undertakes to consider anything that you file today, Please send me a copy of the papers. "Attached as Exhibit (5) is Copansky disability request on 12-26-2007 for a 30 day continuous to retain an attorney to oppose Phil Linza assignment order. It was denied.

Copansky than filed an Ex-Parte Application January 22, 2008, to shorten time for court to rule on his motion to Modify or set aside Assignment Order before it is Executed. Attached as Exhibit (6) is the 1ST Page of Copansky Ex-Parte Application that a judge Scribble "Denied . No Basis Set Forth: Copansky did not know that the judge who denied his Application was Judge Terrence Bruiniers until Picone told him in his email.

Therefore, Copansky must seek relief in this court to protect his Disability and Constitutional rights.

## (ii)  Facts Showing The Existence And Nature Of Claimed Emergency

Paul Copansky Founder of The Diamond Center and The Diamond Center itself were sued  by Phil Linza, a former employee, and defendant in this case. The jury ruled  for Linza and a $300,000 breach of contract dispute turned into a (**$2, 200,000**) judgment against Copansky alone. Attached as exhibit (**7**) is the October 23, 2002 jury verdict..

Copansky deposited  a $3.000,000 Cash Bond, with the court, to secure Linza judgement and file an Appeal..The judgement increased to **$3.065,819,** after The Cal. First Appellate District Court, affirmed the jury verdict and awarded Linza his legal fees on December 30, 2005. The judgement was only $65,819,98. after Copansky paid Linza $3.000,000 in September of 2006

Plaintiff problems began after Linza Trial Attorneys associated in Robert Bartlett and his Law Firm October 27, 2006. as co-counsel for Phil Linza  to collect the remaining  judgement amount of $65,819,00

### The Emergency Occurred On January 9, 2008

Copansky and his wife only income is derived from interest payments of $29,619.61 they  received monthly from an Irrevocable, Remainder Charitable Trust. On January 9, 2008  the Superior court granted Robert Bartlett motion for an Order directing Copansky to assign his Entire Trust interest payments to Phil Linza Attorneys.

Union Bank is the Trustee of Copansky Charitable Trust and has paid all the personal bills for Paul Copansky and his wife **from**  August 2001-**to** April of 2008. Exhibit (**8**) is a 6 month spread sheet Union Bank sent Copansky that shows the bills they have been  paying for him and his wife. The spread sheet is not accurate but disclosed, the trust payments assigned to Linza attorneys, were mostly exempt funds used by Copansky to pay his bills.  Exhibit (**9**) are emails from Debra Lepold  VP of Union Bank and Trustee of Copansky Trust.

7

The emails are notices to Copansky that certain bills were due, and the balance in Nadine Copansky bill paying account was $198.47.Copansky Accountant advised him last week that his taxes last year were $125,000 and will be similar for 2007.Copansky has a serious heart condition and Attention Deficit Disorder."His wife has Cancer and a Pancreas problem. The costs of their medical insurance and Medication exceeds $12,000 a year.

**Copansky and his wife** owe almost $500,000 to Union Bank and were forced to increase that debt by borrowing $7,000 from them a few days ago to pay their house taxes of $6,500 that were due, and other bills. Copansky loan payment to Union Bank is $3,400 a month and that only covers the interest.

Copansky, for the 1st time **in 40 years,** does not have a car and is cash poor, with to much debt, to afford payments to buy a. car. Copansky and his wife are no longer in a position to protect themselves if they need quick cash to cover unexpected. emergencies.

Attached as Exhibit (**10**) is the Notice Of Motion For Assignment Order and Robert Bartlett Declaration In Support Of Motion filed November 16, 2007. Exhibit (**11**) is January 9th 2008, Assignment Of Rights, Restraining-Turnover Order. Exhibit (**12**) is Judgement Creditor Opposition on January 17, 2008 to Defendants Ex-Parte Request for stay of Assignment Order, and Declaration of Robert Bartlett in support of Opposition.

## LEGAL ARGUMENT

## 1 THE  ASSIGNMENT ORDER IS VOID AS IT WAS RENDER UPON DUE PROCESS VIOLATIONS AND  OBTAIN BY BARTLETT AND HOROWITZ CONSPIRACY TO COMMIT PERJURY AND FRAUD

The assignment order was granted entirely upon Linza attorneys using California Code Of Civil Procedure, Section 708.510-708.560 as their only authority to obtain it. Bartlett concealed  all the critical facts from that section, and other Sections of the Codes that discloses his grounds for getting the assignment order was bogus.

### Section 708.510

(c) Subject to subdivisions (d) (e), and (f), in determining whether to order an assignment or the amount of an assignment pursuant to subdivision (a), the court may take into consideration all relevant factors, including the following:

(**1**) The reasonable requirements of a judgment debtor who is a natural person and of persons supported in whole or in part by the judgment debtor.

(**2**)  Payments the judgment debtor is required to make.

(**3**)   The amount remaining due on the money judgment.

(**4**) The amount being or to be received in satisfaction of the right to payment that may be assigned.

 (**e**) When earnings or periodic payments pursuant to a pension or retirement plan are assigned pursuant to subdivision (a), the amount of the earnings or the periodic payments assigned **shall not exceed** the amount that is withheld from a like amount of earnings under Chapter 5 (commencing with Section 706.010) (Wage Garnishment Law)

 (f)  Where a specific amount of the payment or payments to be assigned is exempt by another statutory provision, the amount of the payment or payments to be assigned pursuant to subdivision (a) shall not exceed the amount by which the payment or payments exceed the exempt amount.

9

**708.520.** (a) When an application is made pursuant to Section 708.510 or thereafter, the creditor may apply to the court for an order restraining the judgment debtor from assigning or otherwise disposing of the right to payment that is sought to be assigned.

**(b)** The court may issue an order pursuant to this section upon a showing of need for the order. The court, in its discretion, may require the judgment creditor to provide an undertaking.

**(c)** The court may modify or vacate the order at any time with or without a hearing on such terms as are just.

## A  THE JUDGE CANNOT ORDER JUDGEMENT DEBTOR TO PAY THE JUDGEMENT FROM EXEMPT INCOME OR PROPERTY

Civil Code OF Civil Procedure Section 703.030 (b) States :
" Property described in this chapter or in any other statute as exempt, without making a claim, is not subject to any procedure for enforcement of a money judgment.

c) Nothing in this section limits the authority of the court pursuant to Section 473 to relieve a person upon such terms as may be just from failure to claim an exemption within the time and in the manner prescribed in the applicable enforcement procedures. The judgment debtor has the right to keep certain types of income, called exempt income." The judge cannot order the judgment debtor to pay the judgment from exempt income or property. "

Civil  Procedure 704.210 **States:** "Property or Income that is not subject to enforcement of a money judgment is exempt without making a claim."

**Horowitz and Bartlett** who have represented Linza from 2001-2008 have exceptional legal Skills and are very street smart. They have known since late 2002, Copansky is seriously disabled  and was and still is totally incompetent to represent himself and protect his wife or himself from losing all their assets.

**That claim is confirmed**, by Exhibit (12) which are Dr Lowell Klein-man and Robert McAleese, PHD Declarations that were given to Judge Bruiniers in support of The Diamond Center motion for a re-trail in 2002.

## B  LINZA BARTLETT AND HOROWITZ CONSPIRE TO COMMIT FRAUD AND PERJURY TO OBTAIN COPANSKY ENTIRE INCOME INCLUDING  HIS IRA AND OTHER EXEMPT FUNDS :

"Horowitz and Bartlett knew if they created a plan to assign Copansky entire income and Exempt funds to Linza, it would constitute a fraud on the court and a criminal or civil conspiracy offense. **However,** they also knew Judge Bruiniers had openly stated Copansky credibility is suspect and held him accountable for all the problems during the 2002 jury trial.

They were convinced for good reasons, that no one would protect Copansky or prevent them from doing what ever was needed to be done, in order to obtain Copansky and his wife entire income and exempt funds. In addition, Copansky was no threat as he was still representing himself

## 1  BARTLETT CONCEALED HE LEVIED ON COPANSKY IRA FUNDS AND COMMITS PERJURY AND FRAUD

Bartlett Concealed he levied on Copansky IRA Funds and committed Perjury in his Declaration In Support of Assignment Order. Bartlett declared Plaintiffs attempted to collect the outstanding  balance by issuing an Abstract  placed on defendants property. Plaintiff levied on defendants (**bank account** ) and received $1,654.51 from the levy.) " (P-3: L 8-11)

**NOT TRUE:**   Attached as Exhibit **(13)** is Debra Lepold confirmation that$1,654.51 in Copansky IRA  was paid May 21, 2007. Copansky did not know his IRA balance was Zero until he opened a letter from Union bank showing they billed him $75 for legal services on this matter.

11

## 2    LINZA ATTORNEYS TOOK COPANSKY ENTIRE INCOME: BARTLETT: COPANSKY WAS BROKE AND HAD NO INCOME"

Debra Lepold confirmed in her email that has been attached as exhibit 14, that Paul and his wife, Nadine Copansky Charitable Trust Interests Payments of $29,619.61 was paid to Bartlett, Leader, Picone and Young On 1-28-2008, February 25, 2008 and April 3, 2008. "Pursuant to my conversation with Bartlett, the final payment of $8,277.89 will be made on 4/25/08."

Robert Bartlett declaration November 15, 2007 in support of Assignment disclosed he knew before he filed his motion Copansky trust payments were exempt and the only income he had to stay solvent. "

Copansky advise me, he was broke, **had no income**, was $700,000 in debt, and lost **$3,000,000** in this case. " (P-3: L 8-13)  Excluding the money he receives from Copansky Charitable Trust, plaintiff is unaware of any other assets that may be available for payment on this debt. "(P-3: L 16-20)

Attached as Exhibit (**14**) Bartlett Application for Susan Scriber V.P. of Union Bank to appear and be Examined on June 13, 2007. Bartlett exhibit D attached to his Declaration are copies of pages 8 and 9 of the Examination of Susan Scriber V.P. of Union Bank on August 10, 2007

## 4 COPANSKY PAYMENTS ARE USED TO PAY HOUSEHOLD BILLS

During the Examination on August 10, 2007 of Susan Scriber the following facts were establish on (P-8: L-4-14)

**Bartlett:** Ms. Scriber, has there been any amendments to this trust?

**A.** No. It is an irrevocable trust that can not be amended."

**Bartlett:**  Now there is a clause that talks about making payments to Paul Copansky on a monthly basis, has Union Bank been doing that?  **A. Yes.**

**Q.** Where are those payments sent?

**Scriber:** They are sent to a Bill-Paying Account to pay their Household Bills"

12

Copansky intent is to file a motion to void the Linza Judgement with this court with-in 7 days. Attached as Exhibit (**15**) is the Issue Statement and other pages from that motion.

## CLOSING STATEMENT

Copansky was subjected to unjust treatment and denied equal protection of the law. Linza and his Counsel without conscience took his IRA Funds and entire income .They knew Copansky could not stop them as he was devoid of legal knowledge, and disabled. It has taken Copansky 3 months and around 1,200 hours to finally complete his motion, and file it with this court. That in itself has caused Copansky and his wife severe emotional pain and suffering.

**Copansky Respectfully Requests The Following Relief Today.**

**(1)** To Declare Linza Assignment Order Void as it was in violation of Copansky disability and due process rights

**(2) An** order directing Linza and-or his attorneys to immediately Fed-Ex or Wire $1,654.51 that covers the IRA funds and $88,858.83 that covers the 3 months trust interest payments to Nadine Copansky bill paying account at Union Bank trust department in San Francisco.

**(3)** Copansky is not waiving any of his rights to take other court or legal actions against Linza and his attorneys at a later date

**(4)** To request the Court to provide any other relief to Copansky, that is fair.

I declare under **penalty of perjury** under the laws of California that the foregoing is true and correct.

**Executed:** April 21, 2008

Paul Copansky In Pro-Per

13

Exhibit (16) is Debra Lepold email response to Copansky on June 28, 2007

Paul,   " I received your voice mail requesting I set up a conference call, between you, Susan Scriber and I. Susan received an Order to Appear as well as provide documentation pursuant to a Subpoena for documents  We will comply as required by law. It is best we not discuss this recent development."

## CLOSING STATEMENT

Copansky was subjected  to unjust treatment and denied equal protection of the law. Linza and his Counsel without conscience  took his IRA Funds and entire income .They knew Copansky could not stop them as he was devoid of legal knowledge, and disabled. It has taken Copansky 3 months and around 1,200 hours to finally complete his motion, and file it with this court. That in itself has caused Copansky and his wife severe emotional pain and suffering.

### Copansky Respectfully Requests The Following Relief Today.

(1) To Declare Linza Assignment Order Void as it was in violation of Copansky disability and due process rights

(2) An order directing Linza and-or his attorneys to immediately Fed-Ex or Wire $1,654.51 that covers the IRA  funds and $88,858.83 that covers the 3 months trust interest payments to Nadine Copansky bill paying account at Union Bank trust department in San Francisco.

(3)  Copansky is not waiving any of his rights to take other court or legal actions against Linza and his attorneys at a later date

(4)  To request the Court to provide any other relief to Copansky, that is fair.


I declare under **penalty of perjury** under the laws of California that the foregoing is true and correct.

**Executed:** April 21, 2008

Paul Copansky In Pro-Per

13

Subj:    **No More Ex Partes, Please**
Date:    1/28/2008 6:48:46 A.M. Pacific Standard Time
From:    mlp@leader-picone.com
To:      userpndc@aol.com
CC:      srubinoff@mindspring.com, RobertB@BL-Plaw.com

Paul:

Please read and take heed of the attached letter. Thank you.

Simply put, there should be no more ex parte applications concerning the assignment order. Otherwise, we will
seek an order barring you from ever bringing an ex parte application.

Malcolm


--------------------------------------------------------------------
Malcolm Leader-Picone, Esq.
BARTLETT, LEADER-PICONE & YOUNG, LLP
2201 Broadway, Suite 803
Oakland, CA  94612

Phone:    (510) 444-2404, Ext. 24
Fax:      (510) 444-1291
Email:    mlp@leader-picone.com
Website:  www.BL-Plaw.com

<><><><><><>**Important Notice to Unintended Recipient**<><><><><><>
THIS TRANSMISSION MAY BE PRIVILEGED AND MAY CONTAIN
CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE PERSON(S)
NAMED ABOVE. ANY  OTHER DISTRIBUTION, RE-TRANSMISSION,
COPYING OR DISCLOSURE IS STRICTLY PROHIBITED.  IF YOU HAVE
RECEIVED THIS TRANSMISSION IN ERROR, PLEASE NOTIFY ME
IMMEDIATELY BY TELEPHONE OR RETURN E-MAIL, AND DELETE
THIS FILE/MESSAGE FROM YOUR SYSTEM.
<><><><><><><><><><><><><><><><><><><><><><><><><><><><>

1    BARTLETT, LEADER-PICONE & YOUNG, LLP
    ROBERT S. BARTLETT (STATE BAR NO. 79752)
2    MALCOLM LEADER-PICONE (State Bar No. 104620)
    2201 BROADWAY, SUITE 803
3    OAKLAND, CA 94612
    TELEPHONE: (510) 444-2404
4    FACSIMILE: (510) 444-1291

5    Attorneys for Plaintiff/Judgment Creditor
    PHIL LINZA
6

7

8             SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                COUNTY OF CONTRA COSTA

10

11                   MARTINEZ BRANCH

| | |
|---|---|
| PHIL LINZA,<br><br>      Plaintiff,<br><br>vs.<br><br>THE DIAMOND CENTER, INC., fka<br>COPANSKY ENTERPRISES, INC., a<br>corporation; PAUL COPANSKY, an<br>individual<br><br>      Defendants. | ) No. C01-01898<br>)<br>) **ORDER PROHIBITING COPANSKY**<br>) **FROM SEEKING ANY FURTHER**<br>) **RELIEF ON AN *EX PARTE* BASIS.**<br>)<br>) Date: January 29, 2008<br>) Time: 1:30 p.m.<br>) Dept: 60<br>)<br>)<br>) |

## ORDER

    Upon the *ex parte* application of judgment creditor for an order prohibiting defendant and judgment debtor Paul Copansky from bringing any further *ex parte* applications in this case; and pursuant to the Court's inherent authority under Code of Civil Procedure section 128, subdivision (a)(5), to "'control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto'" (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145); and for good cause appearing,

////

ORDER PROHIBITING FURTHER *EX PARTE* APPLICATIONS
                                     Case No. C01-01898

\\BL-PSERVER2\BL-P FILES\CLIENT FILES\J TO L\LINZA, P\DIAMOND CENTER\MOTIONS\EX PARTE 01-29-08\ORDER EX PARTE 012908 MLP.DOC

**IT IS ORDERED THAT:**

Mr. Paul Copansky is prohibited from making any further *ex parte* applications to the Court in this action until further order of this Court.

DATED:  January 29, 2008.

_____
Hon. Terence L. Bruiniers

Subj:    **Fwd: Paul Copansky Notice of Ex-Parte hearing for Wednesday, January 30th.**
Date:    1/29/2008 11:51:22 A.M. Pacific Standard Time
From:    Userpndc
To:      Debra.Lepold@uboc.com

---

Start the year off right. Easy ways to stay in shape in the new year.

---

Forwarded Message:
Subj:    **Paul Copansky Notice of Ex-Parte hearing for Wednesday, January 30th.**
Date:    1/29/2008 11:10:58 A.M. Pacific Standard Time
From:    mlp@leader-picone.com
To:      Userpndc@aol.com
CC:      RobertB@BL-Plaw.com, srubinoff@mindspring.com
*Sent from the Internet (Details)*

Paul:

This email will confirm our telephone conversation this morning at 10:00 a.m. You have given me notice that your ex parte application will not be made today, but will be made, if at all, tomorrow, January 30, 2008, at 1:30 p.m. You have told me that you are still considering your position and your options. You promised to let me know, no later than Noon tomorrow, if you decide not to go ahead with the ex parte application tomorrow. You later called and promised to send me any updated papers that you will present if you go forward.

If I don't hear from you by Noon tomorrow telling me that the ex parte application is off, I will see you in court tomorrow afternoon at 1:30 p.m.

Malcolm

---

Malcolm Leader-Picone, Esq.
BARTLETT, LEADER-PICONE & YOUNG, LLP
2201 Broadway, Suite 803
Oakland, CA  94612

Phone:    (510) 444-2404, Ext. 24
Fax:      (510) 444-1291
Email:    mlp@leader-picone.com
Website:  www.BL-Plaw.com

<><><><><><>**Important Notice to Unintended Recipient**<><><><><><>
THIS TRANSMISSION MAY BE PRIVILEGED AND MAY CONTAIN
CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE PERSON(S)
NAMED ABOVE.  ANY OTHER DISTRIBUTION, RE-TRANSMISSION,
COPYING OR DISCLOSURE IS STRICTLY PROHIBITED.  IF YOU HAVE
RECEIVED THIS TRANSMISSION IN ERROR, PLEASE NOTIFY ME
IMMEDIATELY BY TELEPHONE OR RETURN E-MAIL, AND DELETE
THIS FILE/MESSAGE FROM YOUR SYSTEM.
<><><><><><><><><><><><><><><><><><><><><><><><><><><><>

Malcolm,

Per our discussions a few days ago, I did say, you would be getting an email from me with-in the next hour that will let you know whether I decided to go forward with doing an ex parte application the next day, or walk away. However, I decided to re-review the emails you sent me last week, before I made a final decision. Your emails convince me to go forward. It is best explained by using one of them as an example.

**Below is a recap of your January 29th email.**

**Paul,** "This email will confirm our conversation this morning at 10: a.m.. You gave me notice your ex parte application will not be made at 1:30 p.m. today, but will be made, if at all, tomorrow, January 30, 2008, at 1:30 p.m. You told me that you are still considering your position and options. You promised to let me know, no later than Noon tomorrow, if you decide not to go ahead with the ex parte application tomorrow."

**RESPONSE: That was only part of our conversation.**

You omitted all the conversation we had that could harm your position. **You email me** January 29th, a 30 page legal brief, supported by exhibits, and authorities, in opposition to my ex parte application. In addition, you email me copies of the Judgement Creditors request for an order to prohibit Copansky from seeking any further relief on an Ex-Parte basis.

you decided to summit your pleadings to Judge Terrence Bruiniers, oppose to the judge assigned to our case ,and granted your motion to assign my trust payments to your law firm. **Your cover sheet stated:**. If you change your mind and want to call it off, please call me on my cell phone at 510-502-4323. I called you at 10: a.m **January 29th** and said, my call was in response to your cover sheet and opposition papers you sent me early this morning I asked you what authority or basis did you used to select Judge Bruiniers,

1

as the person to rule on your opposition, oppose to the judge assigned to our case, and granted your motion for assignment rights.

**You said that Judge Bruiniers** was the trial judge and therefore still involved in the case. Perhaps you do have the right to use him in our case, but by doing so is unconscionable.  You know this case has been in constant litigation for over 6 years and Judge Bruiniers repeatenly treated me with disrespect and hostility over those years.

**I also told you** that my motion for relief will be automatically denied by Judge Bruiniers due to the fact I filed a lengthy motion to recuse him and claimed he committing gross misconduct offenses.

**In addition, You willfully distorted the facts,** in your motion, requesting an court order, to bar me from seeking any more relief on a Ex-Parte basis. You were less then honest by stating in your declaration, my wife called you at the court and said her husband could not appear that day or even speak on the phone to you.  **THAT IS A LIE:**  My wife told you I had a stress attack caused by my Attention Deficit Disorder and you told her that was nonsense.

.  **What is worse than that is,** both my wife and myself left two messages on your voice mail, I had a stress or panic attack, before you arrived at court.

 **NOTE:**  I am working on an Emergency Motion that will be filed at the Oakland district court today. I will email copy to you in 2-3 hours-  **PAUL**

2

Paul Copansky
724 Blue Spruce Drive
Danville California 94506

Telephone: (925) 736-8705
in-pro-per for Defendant
Paul Copansky

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF CONTRA COSTA

PHIL LINZA

     Plaintiff,

vs.

   PAUL COPANSKY

Defendant

**Case No:** CO6-01898

**DEFENDANTS REQUEST FOR 30 DAY CONTINUOUS TO RETAIN ATTORNEY TO FILE OPPOSITION TO PLAINTIFFS MOTION: PAUL COPANSKY DECLARATION IN SUPPORT OF REQUEST**

**Department:** 30
**Hearing:** Dec 27, 2007
**Time :** 8: 30 a.m.

**Before:** Judge Diana Becton Smith

    I, Paul Copansky am the defendant in the above entitled action and make this declaration in support of a request for a two-four week continuous of the Dec 27th Hearing in order to retain counsel.

  **1. I apologize** to the court and plaintiff for waiting until the day before the hearing date to request a continuous.

  **2**. However, I have a disability- Attention Deficit/ Hyperactivity Disorder. The symptoms of my disorder are very severe and part of the court record.

Exhibit ___A___

**3.** I believed Gregory Nuti from the Law firm of Schnader Harrison Segal and Lewis would be representing my interest in this case and therefore I would not be forced to represent myself.

**4. I spent considerable time** on the 17th 18th and 19th discussing the Trust and other case issues with Mr. Nuti. On Thursday, the 20th, I met Mr. Nuti and Chris Hart a pardner of the law firm at their office in San Francisco.

**5.** The meeting above, took place after Nuti and Hart received copies of plaintiffs motion for assignment and had a conversation with plaintiffs attorney, Robert Bartlett.

**6. The attorneys agreed** to represent defendant and Copansky agreed to retain them, based on attorneys detailing legal costs in retainer agreement. Copansky never received the retainer agreement. As a result, defendant needs time to hire a competent attorney to represent him and his wife.

7. **Defendant contends,** the plaintiff will not be harmed in any way, by the court granting a continuous in this matter.

**8.** Enclosed are 3 E-mails. The 1st one is from Gregory Nuti dated 12-17-2007 that states he received Copansky messages. The 2nd one is from Union Bank to Copansky dated 12-18-2007 that informed him, they will hand deliver copies of the plaintiffs petition to Mr. Nuti. The last one is from Nuti dated 12-19-2007 requesting Copansky to meet him on Thursday or Friday.

**I declare under penalty of perjury** of the state of California that the foregoing is true and correct.

Executed on Dec 26th 2007 at Danville, California.

Paul Copansky

Subj:    **RE: FYI Conference call**
Date:    12/17/2007 11:27:38 A.M. Pacific Standard Time
From:    GNuti@Schnader.com
To:      Userpndc@aol.com

Paul:

Received your messages. We are all good. I will take a look at everything, talk to Fisher and Ganzer and get back to you.

**Gregory C. Nuti**
**Schnader**
    ATTORNEYS AT LAW
**Schnader Harrison Segal & Lewis LLP**
**One Montgomery Street, Suite 2200**
**San Francisco, California 94104-5501**
**Telephone: (415) 364-6700**
**Facsimile: (415) 364-6785**
gnuti@schnader.com
www.schnader.com

**From:** Userpndc@aol.com [mailto:Userpndc@aol.com]
**Sent:** Monday, December 17, 2007 11:16 AM
**To:** Nuti, Gregory
**Subject:** FYI Conference call

See AOL's top rated recipes and easy ways to stay in shape for winter.

IRS Circular 230 Disclosure. To ensure compliance with requirements imposed by the IRS, we inform you that the federal tax advice (if any) contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Subj:     **Package off to Nuti**
Date:     12/18/2007 10:34:27 A.M. Pacific Standard Time
From:     Debra.Lepold@uboc.com
To:       userpndc@aol.com

Hi Paul,
FYI.  Yesterday afternoon I placed a complete copy of the petition in our interoffice mailbag to the SF Trust office.
Someone will hand deliver the package to Nuti today.  I did call him this a.m. to let him know a package was
coming.

Regards,

Debra P. Lepold
Vice President & Regional Manager
UNION BANK OF CALIFORNIA
400 University Avenue
Palo Alto, CA 94301
650 859-1228 direct
650 859-1201 fax
Mailcode: 1-647-598


*************************************************************************

This communication (including any attachments) may contain privileged or
confidential information intended for a specific individual and purpose,
and is protected by law.  If you are not the intended recipient, you should
delete this communication and/or shred the materials and any attachments and
are hereby notified that any disclosure, copying, or distribution of this
communication, or the taking of any action based on it, is strictly prohibited.

Thank you.

Subj:      **Diamond Center-Copansky Legal Issues**
Date:      12/19/2007 12:20:18 P.M. Pacific Standard Time
From:      GNuti@Schnader.com
To:        Userpndc@aol.com
CC:        CHart@Schnader.com

Paul:

     Could you meet my partner Chris Hart and me here in our office on either Thursday or Friday this week? We would like to discuss with you the terms under which we would agree to represent you. We think these discussions are best done face to face. Please let me know your availability.

**Gregory C. Nuti**
**Schnader**
  ATTORNEYS AT LAW
**Schnader Harrison Segal & Lewis LLP**
**One Montgomery Street, Suite 2200**
**San Francisco, California 94104-5501**
**Telephone: (415) 364-6700**
**Facsimile: (415) 364-6785**
gnuti@schnader.com
www.schnader.com

---

**From:** Userpndc@aol.com [mailto:Userpndc@aol.com]
**Sent:** Monday, December 17, 2007 10:25 PM
**To:** Nuti, Gregory
**Subject:** FYI. The Diamond Center-Copansky Appeal Brief

Greg,

   Perhaps, the punitive damages argument in brief might be of interest to you.

Regards,

Paul

---

See AOL's top rated recipes and easy ways to stay in shape for winter.

---
---

IRS Circular 230 Disclosure. To ensure compliance with requirements imposed by the IRS, we inform you that the federal tax advice (if any) contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

## PROOF OF SERVICE BY MAIL

**CASE NO.** CO1-01898

I am over the age of 18 and not a party to the within action. My home address is 724 Blue Spruce Drive, Danville, California 94506

On Dec 26, 2007 I served the following entitled document:

### REQUEST FOR 30 DAY CONTINUOUS
### DECLARATION OF PAUL COPANSKY

by placing true and correct copies thereof in sealed an envelope addressed as follows:

> Bartlett, Leader-Picone and Young
> 2201 Broadway
> Suite 803
> Oakland, CA 94612

On this day, I placed for collection and processing the above document to be deposited with the United States Postal Service in the ordinary course of business. .

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on Dec 26, 2007, at Danville, California 94506

Nadine Copansky

Paul Copansky
724 Blue Spruce Drive
Danville California 94605

Telephone:  (925) 736-8705
in-pro-per for Defendant
Paul Copansky

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF CONTRA COSTA

PHIL LINZA,

     Plaintiff,

     vs.

THE DIAMOND CENTER, INC., a
corporation, PAUL COPANSKY, an
individual

     Defendants.

Case No: CO1-01898

**PAUL COPANSKY THE JUDGEMENT DEBTOR *EX PARTE* APPLICATION TO SHORTEN TIME FOR COURT TO RULE ON HIS MOTION FOR AN ORDER TO MODIFY OR SET ASIDE THE JANUARY 9TH, ASSIGNMENT ORDER BEFORE IT IS EXECUTED**

**PAUL COPANSKY DECLARATION AND REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION**

| | |
|---|---|
| **Date:** | 1-22-2008 |
| **Department** | **60** |
| **Time:** | 1:30 p.m. |
| **Before Hon:** | Judith Sanders |

Code of Civil Procedure Section 708.560.**(a)** Authorizes the judgment debtor or judgment creditor to apply, to the court on noticed motion, for an order to modify or set aside the assignment order.

1

F I L E D

OCT 2 3 2002

CLERK OF THE COURT
SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF CONTRA COSTA
by _____
S. HALSTENSON

SUPERIOR COURT OF CALIFORNIA
COUNTY OF CONTRA COSTA
UNLIMITED JURISDICTION

PHIL LINZA,

    Plaintiff,

    vs.

THE DIAMOND CENTER, INC., fka
COPANSKY ENTERPRISES, INC.,
a corporation, PAUL COPANSKY,
an individual, and DOES 1 through 20,
inclusive,

    Defendants.

CASE NO. C01-01898

**JUDGMENT ON JURY VERDICT**

This action came on regularly for trial on September 23, 2002, in Department 5 of the Superior Court, the Hon. Terence L. Bruiniers Judge presiding; the plaintiff PHIL LINZA appearing by attorneys Martin M. Horowitz and Stephanie Rubinoff of Horowitz & Rubinoff, defendant THE DIAMOND CENTER, INC. appearing by attorney Lee P. Bardellini of the firm Bardellini, Straw & Cavin, and defendant PAUL COPANSKY appearing in propria persona.

A jury of twelve persons was regularly impaneled and sworn. Witnesses were sworn and testified. After hearing the evidence and arguments of counsel, the jury was duly instructed by the Court and the cause was submitted to the jury. The jury deliberated and thereafter returned into court with its verdict as follows:

On plaintiff's claim for breach of written contract, plaintiff is entitled to judgment against

1  defendant THE DIAMOND CENTER, INC. and defendant PAUL COPANSKY, jointly and severally,
2  in the amount of $341,333.00.

3         On plaintiff's claim for breach of the covenant of good faith and fair dealing, plaintiff is entitled
4  to judgment against defendant THE DIAMOND CENTER, INC. in the amount of $99,964.00.

5         On plaintiff's claim for fraud by a false promise, plaintiff is entitled to judgment against
6  defendant THE DIAMOND CENTER, INC. and defendant PAUL COPANSKY, jointly and severally,
7  in the amount of $158,667.00.

8         On plaintiff's claim for punitive damages, plaintiff is entitled to judgment against defendant
9  PAUL COPANSKY in the amount of $1,900,000.00.

10        Plaintiff is awarded attorney's fees pursuant to CCP §1033.5(a)(10)(A) against defendant THE
11  DIAMOND CENTER, INC. and defendant PAUL COPANSKY, jointly and severally, in the amount
12  of $461,842.50, at the rate of $285.00 per hour for 1,620.5 hours of attorney time expended. The sum
13  of $7,500.00 is to be deducted from the amount of $461,842.50 in attorney's fees if and when
14  defendants pay plaintiff $7,500.00, pursuant to the Court's September 24, 2002 Notice of Decision
15  awarding plaintiff sanctions in that amount, and not otherwise.

16        It appearing by reason of said verdict that: plaintiff PHIL LINZA is entitled to judgment against
17  defendant THE DIAMOND CENTER, INC. and defendant PAUL COPANSKY

18        NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that said plaintiff
19  have and recover from defendant THE DIAMOND CENTER, INC. and defendant PAUL
20  COPANSKY, jointly and severally, the sum of $961,842.50, that said plaintiff have and recover from
21  defendant THE DIAMOND CENTER, INC. the sum of $99,964.00, and that said plaintiff have and
22  recover from defendant PAUL COPANSKY the sum of $1,900,000.00, with interest thereon at the rate
23  of ten percent (10%) per annum from the date of the entry of this judgment until paid, together with
24  costs pursuant to CCP §1032 and CCP §998.

25

26

27  Dated: _____Oct 23rd, 2002_____                    _____
28                                                      Judge of the Superior Court

JUDGMENT ON JURY VERDICT
CASE NO. C01-01898

2

# Paul and Nadine Copansky's Accounting of Bills Paid by UBOC

Transfer from CRUT account
$31,008.80

| **Bills paid by UBOC** | Paid | July. 2007 | Aug. 2007 | Sept. 2007 | Oct. 2007 | Nov. 2007 | Dec. 2007 | Ja 20 |
|---|---|---|---|---|---|---|---|---|
| AT&T | Monthly | $191.29 | $368.51 | $329.92 | $552.17 | $530.75 | $348.81 | $45 |
| AT&T Mobility | Monthly | $41.95 | $41.95 | | $79.15 | $47.66 | | $1 |
| BofA Credit Card | | $3,000.00 | $6,000.00 | $3,000.00 | $3,000.00 | | $2,000.00 | |
| Blackhawk Country Club | | $432.00 | $287.00 | $287.00 | $422.00 | $287.00 | | |
| Blackhawk Homeowners Association | Quarterly | | | $456.00 | | | $456.00 | $3 |
| Blue Cross of CA | Every 2 Months | $1,614.00 | | $2,010.00 | | $2,010.00 | | $2. |
| Blue Cross of CA | Every 2 Months | $838.00 | | $838.00 | | $838.00 | | $83 |
| Comcast | | | $253.62 | $135.26 | $131.03 | $134.96 | | $13 |
| First Bank Card | | $3,000.00 | $7,000.00 | $3,000.00 | | $500.00 | $5,000.00 | |
| PG&E | Monthly | $889.84 | $836.45 | $1,035.41 | $520.90 | $515.90 | $715.16 | |
| Allied Waste Service | Quarterly | | $98.10 | $98.10 | | | | |
| Dublin Self Storage | Monthly | $829.00 | $829.00 | $829.00 | $829.00 | $829.00 | $829.00 | $82 |
| East Bay Municipal Utility District | Every 2 Months | | $858.02 | | $509.90 | | $336.44 | |
| Farmers Insurance, 2008 DTS | Semi-Annual | | | | | | $1,419.00 | |
| Farmers Insurance, 2005 Deville | Semi-Annual | | | | | | | |
| Farmers Insurance, Fire Insurance Exchange | | $2,635.82 | | | | | | |
| Golden Bear Pool Service | Monthly | $145.00 | $145.00 | $145.00 | $145.00 | $145.00 | $145.00 | $14 |
| UBOC Loan Pmt | Monthly | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2. |
| UBOC Loan Pmt | Monthly | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | |
| Larry Ganzer | | | | | $47,000.00 | | | |
| GMAC | | $593.40 | $593.40 | $593.40 | $593.40 | $593.40 | | |
| Transfer to UBOC checking | | | | $26,000.00 | | | $37,000.00 | $2. |
| **TOTAL** | | $19,210.30 | $22,311.05 | $43,757.09 | $58,782.55 | $11,431.67 | $53,249.41 | $9, |

Subj:     **Property taxes due 4/10**
Date:     4/4/2008 8:46:09 A.M. Pacific Daylight Time
From:     Debra.Lepold@uboc.com
To:       userpndc@aol.com

Hi Paul,
Your property taxes are due next Thursday (actually they were due in Feb, but 4/10 is the end of the grace period).  I don't recall specifically what the amount is as I am working from home this a.m.  We don't receive your invoices so you might have it.  Let me know if you need me to look into it for you when I'm back in the office.
Debra


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This communication (including any attachments) may contain privileged or
confidential information intended for a specific individual and purpose,
and is protected by law.  If you are not the intended recipient, you should
delete this communication and/or shred the materials and any attachments and
are hereby notified that any disclosure, copying, or distribution of this
communication, or the taking of any action based on it, is strictly prohibited.

Thank you.

Subj:   **FW: Golden Bear Pool Service**
Date:   4/2/2008 4:50:44 P.M. Pacific Daylight Time
From:  Debra.Lepold@uboc.com
To:    userpndc@aol.com

Hi Paul. Since this is large ($1,330), I just wanted you to know that I will pay it once the funds arrive.

Debra

---

**From:** Debra Lepold
**Sent:** Saturday, March 15, 2008 4:42 PM
**To:** Paul Copansky (userpndc@aol.com)
**Subject:** Golden Bear Pool Service

Hi Paul,
Invoice received for $1,330. $145 for normal service and then additional for, new skimmer basket, new bag for Polaris, new booster pump, repaired filter pump, replace seal and a bunch of other things. If you want me to send you the bill let me know. But, please let me know if we should pay it.

Regards,

Debra P. Lepold
Vice President & Regional Mgr.
UNION BANK OF CALIFORNIA, NA
Palo Alto Trust Office
400 University Avenue
Palo Alto, CA 94301
650 859-1228 direct
650 859-1201 fax

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This communication (including any attachments) may contain privileged or
confidential information intended for a specific individual and purpose,
and is protected by law. If you are not the intended recipient, you should
delete this communication and/or shred the materials and any attachments and
are hereby notified that any disclosure, copying, or distribution of this
communication, or the taking of any action based on it, is strictly prohibited.

Thank you.

Subj:    **Cash balance**
Date:    4/1/2008 3:57:23 P.M. Pacific Daylight Time
From:    Debra.Lepold@uboc.com
To:      userpndc@aol.com

Hi Paul,
FYI. The balance in the bill paying account is $198.47.


Debra P. Lepold
Vice President & Regional Mgr.
UNION BANK OF CALIFORNIA, NA
Palo Alto Trust Office
400 University Avenue
Palo Alto, CA 94301
650 859-1228 direct
650 859-1201 fax


* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
This communication (including any attachments) may contain privileged or
confidential information intended for a specific individual and purpose,
and is protected by law.  If you are not the intended recipient, you should
delete this communication and/or shred the materials and any attachments and
are hereby notified that any disclosure, copying, or distribution of this
communication, or the taking of any action based on it, is strictly prohibited.

Thank you.

Subj:   **Bank of America credit card statement...**
Date:   3/26/2008 11:19:04 A.M. Pacific Daylight Time
From:  Debra.Lepold@uboc.com
To:    userpndc@aol.com

...arrived today.  I will forward the bill to you for your review.

Balance is $18,370.21
Minimum payment due $522.00 by 4/15

Do you want us to pay the minimum amount due in early April?

Debra P. Lepold
Vice President & Regional Mgr.
UNION BANK OF CALIFORNIA, NA
Palo Alto Trust Office
400 University Avenue
Palo Alto, CA 94301
650 859-1228 direct
650 859-1201 fax

*********************************************************************
This communication (including any attachments) may contain privileged or
confidential information intended for a specific individual and purpose,
and is protected by law.  If you are not the intended recipient, you should
delete this communication and/or shred the materials and any attachments and
are hereby notified that any disclosure, copying, or distribution of this
communication, or the taking of any action based on it, is strictly prohibited.

Thank you.



FILED

2007 NOV 16 A 8: 54

K TORRE CLERK OF THE SUPERIOR COURT
COUNTY OF CONTRA COSTA, CALIF.
BY_____
C. _____ DEPUTY CLERK

1  BARTLETT, LEADER-PICONE & YOUNG, LLP
   ROBERT S. BARTLETT (State Bar No. 79752)
2  2201 BROADWAY, SUITE 803
   OAKLAND, CA 94612
3  TELEPHONE: (510) 444-2404
   FACSIMILE: (510) 444-1291
4
   Attorneys for Plaintiff
5  PHIL LINZA

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9            COUNTY OF CONTRA COSTA, MARTINEZ BRANCH

10 PHIL LINZA,                          )  No. C01-01898
                                        )
11            Plaintiffs,               )
                                        )  **NOTICE OF MOTION FOR**
12 vs.                                  )  **ASSIGNMENT ORDER**
                                        )
13 THE DIAMOND CENTER, INC., fka        )  DATE  :  12-27-07
   COPANSKY ENTERPRISES, INC., a        )  TIME  :  8:30
14 corporation; PAUL COPANSKY, an       )  DEPT. :
   individual                           )           30
15                                      )
              Defendants.               )
16 ─────────────────────────────────    )

17

18            TO: PAUL COPANSKY, the judgment debtor:

19            PLEASE TAKE NOTICE that on December 27      , 2007, at 8:30 a.m., or as

20 soon thereafter as the matter can be heard, in Department __30__ of this court, located at 725 Court

21 Street, Martinez, California, the plaintiff-judgment creditor, Phil Linza, will move this court under

22 Code of Civil Procedure Section 708.510-708.560 for an Order directing that (1) Paul Copansky, the

23 defendant, assign to the judgment creditor, his rights to payment due or to become due to the judgment

24 debtor from Union Bank of California; (2) the judgment creditor requests that Paul Copansky provide

25 a monthly accounting to the judgment creditor of all funds the judgment debtor receives from Union

26 Bank of California; (3) the judgment creditor requests that the monthly accounting described above

27 include any and all payments received by Ivy Nadine Copanksy from Union Bank of California as

28 authorized and directed by Paul Copansky and as further described in this motion and   (4) the

---

Notice of Motion for Assignment Order                          Case No. C01-01898

1   judgment creditor, pursuant to CCP 708.540, requests that the court direct Union Bank of California,

2   an obligor, to turnover directly to the judgment creditor, their attorney or any other party so authorized

3   by the Court, any and all monthly payments sent by Union Bank of California to Paul Copansky or his

4   designate, Ivy Nadine Copanky, from the Copansky Charitable Remainder Trust.   Such trust and

5   payments are further described in this motion.

6           This motion is made on the grounds that the court awarded attorney fees entered in this

7   action against the defendant-judgment debtor, Paul Copansky which has become final and remains

8   unsatisfied in the amount of $94,346.49 up and through August 28, 2007 plus future accrued interest at

9   the rate of $23.49 per day, and that the judgment debtor has assignable rights to the payments specified

10  above.

11          This motion is based on this Notice, the pleadings, records and files in this action, the

12  memorandum in support of motion, the Declaration of Robert S. Bartlett, and such evidence as may be

13  presented at the hearing.

14  DATED: _____, 2007.        BARTLETT, LEADER-PICONE & YOUNG, LLP

15

16                                       BY:_____

17                                          ROBERT S. BARTLETT
                                            Attorneys for PHIL LINZA

18

19

20

21

22

23

24

25

26

27

28

FILED

2007 NOV 19  A 8:

K TORRE, CLERK OF THE SUPERIOR COURT
COUNTY OF CONTRA COSTA, CAL.
BY_____
CLERK

1   BARTLETT, LEADER-PICONE & YOUNG, LLP
    ROBERT S. BARTLETT (State Bar No. 79752)
2   2201 BROADWAY, SUITE 803
    OAKLAND, CA 94612
3   TELEPHONE: (510) 444-2404
    FACSIMILE: (510) 444-1291
4
    Attorneys for Plaintiff
5   PHIL LINZA

6

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                COUNTY OF CONTRA COSTA, MARTINEZ BRANCH

10  PHIL LINZA,                          )   No. C01-01898
                                         )
11              Plaintiffs,              )
                                         )   DECLARATION OF ROBERT S.
12  vs.                                  )   BARTLETT IN SUPPORT OF MOTION
                                         )   FOR ASSIGNMENT ORDER
13  THE DIAMOND CENTER, INC., fka        )
    COPANSKY ENTERPRISES, INC., a        )   DATE : 12-27-07
14  corporation; PAUL COPANSKY, an       )   TIME :  8:30
    individual                           )   DEPT. :  30
15                                       )
                                         )
16              Defendants.              )
                                         )
17  _____

18      I, ROBERT S. BARTLETT, declare:

19      That I am the attorney for the plaintiff-judgment creditor, Phil Linza, and as such am

20  the proper person to make the following declaration:

21      1.      The defendant, Paul Copansky, owes the plaintiff money.  Attached hereto as

22  Exhibit "A" and incorporated herein by reference is a copy of the Order awarding attorney fees in this

23  matter.  Effective August 28, 2007 the balance owed pursuant to Exhibit "A" is $94,346.49 plus

24  accrued interest at the rate of $23.49 per day thereafter and costs.

25      2.      Paul Copansky, the debtor, is a settlor and beneficiary under a Charitable

26  Remainder Trust.  Attached hereto as Exhibit "B" and incorporated herein by reference is a copy of

27  that trust.  Exhibit "B" is a true and correct copy of the Trust agreement as provided by Susan Dehner

28

_____
Declaration of Robert S. Bartlett                                    Case No. C01-01898

W:\CLIENT FILES\U TO E\UNZ\CF\RICHMOND CENTER\MOTIONS\DECL RSB I02907.DOCS/16/07

1    Scribner of Union Bank pursuant to subpoena at an Order of Examination held on August 10, 2007.

2         3.      Union Bank of California, hereinafter referred to as Union, is the Trustee of this

3    trust. Attached hereto as Exhibit "C" and incorporated herein by reference is a letter from Union

4    indicating that it is the trustee of this trust. Exhibit "C" is a true and correct copy of such letter as

5    provided by Susan Dehner Scribner of Union Bank pursuant to subpoena at an Order of Examination

6    held on August 10, 2007. This trust has not been amended. Attached hereto as Exhibit "D" and

7    incorporated herein by reference are true and correct copies of pages 8 and 9 of the Order of

8    Examination transcript of Susan Dehner Scribner, which occurred on August 10, 2007 in department

9    60 of the above-entitled court. Ms. Scribner, vice president and senior trust officer of Union Bank of

10    California, stated at the third party Order of Examination held on August 10, 2007 that there have been

11    no amendments to this trust, and that such trust cannot be amended because it is irrevocable.

12         4.      A Copansky Charitable Remainder Trust, effective January 24, 2007, had an

13    actual market value of $3,591,408.24. Monthly payments were disbursed to the settlor in the amount

14    of $31,008.80. Those payments have been made on a monthly basis for each and every month in 2007.

15    Attached hereto as Exhibit "E" and incorporated herein by reference is a document produced by Union

16    pursuant to the Subpoena that was served with the Order of Examination. Such document is dated

17    January 24, 2007. Exhibit "E" is a true and correct copy of the document produced by Union at the

18    Order of Examination.

19         5.      Union electronically transfers monthly payments, pursuant to the instructions of

20    Paul Copansky, from their San Francisco office to their Palo Alto office. Such funds are deposited in

21    the Ivy Nadine Copansky bill-payer account. Attached hereto as Exhibit "F" and incorporated herein

22    by reference is a true and correct copy of a letter dated October 3, 2006 produced by Union at the

23    above-described Order of Examination. Such letter indicates that funds are transferred from the San

24    Francisco office to the Palo Also office of Union and deposited directly in the Ivy Nadine Copansky

25    account. Paul Copansky is married to Ivy Nadine Copansky. Attached hereto as Exhibit "G" and

26    incorporated herein by reference is a true and correct copy of testimony from the Order of Examination

27    of Paul Copansky held on January 23, 2007 in Department 60 of the above-entitled court, in which

28

---

Declaration of Robert S. Bartlett                               Case No. C01-01898

Paul Copansky admitted that he was married to Ivy Nadine Copansky.

6.     Plaintiff attempted to obtain information from the debtor on his assets. Plaintiff conducted an Order of Examination on the debtor, Paul Copansky, on January 23, 2007. At that Order of Examination the defendant advised me that he was broke, he had no income, he was $700,000 in debt, and that he has lost $3,000,000 in this case. Attached hereto as Exhibit "H" and incorporated herein by reference are true and correct copies of page 32 of the Order of Examination transcript of Paul Copansky.

7.     After the Order of Examination plaintiff attempted to collect the outstanding balance. Plaintiff issued an Abstract, which has been placed on the defendant's property. Plaintiff levied on the defendant's bank account and received $1,644.51 from the levy. Plaintiff levied on defendant's bank account in San Francisco at Union Bank and was advised by Union Bank that there was no such account in San Francisco under the name of Paul Copansky. Attached hereto as Exhibit "I" and incorporated herein by reference is a true and correct copy of that return of levy as completed by Union Bank.

8.     Defendant has opposed plaintiff's attempts to obtain information regarding his assets. Excluding the money Copanksy receives from the Copansky Charitable Remainder Trust plaintiff is unaware of any other assets that may be available for payment on this debt. Copansky has stated that the Copansky Charitable Remainder Trust is not his asset and that he has no right to the control of this asset. Copansky told plaintiff's counsel that asking questions at an Order of Examination constituted torture and that he would not provide confidential financial records. Attached hereto as Exhibit "J" and incorporated herein by reference is a copy of an ex-parte Motion to Shorten Time, prepared but never filed by Copansky, which contains these specific statements.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this __ day of _____, 2007, at Oakland, California.

_____
ROBERT S. BARTLETT

1  MARTIN M. HOROWITZ # 79073
   STEPHANIE RUBINOFF # 98229
2  HOROWITZ & RUBINOFF
   1440 Broadway, Suite 607
3  Oakland, CA 94612-2026
   Telephone:    (510) 444-7717
4  Facsimile:    (510) 444-6109

5  Attorneys for Plaintiff
   PHIL LINZA
6

7

8                    SUPERIOR COURT OF CALIFORNIA
                        COUNTY OF CONTRA COSTA
9                        UNLIMITED JURISDICTION

10  PHIL LINZA,                              Case No. C01-01898

11            Plaintiff,

12       vs.

13  COPANSKY ENTERPRISES, INC.,
    a corporation, PAUL COPANSKY,
14  an individual, and DOES 1 through 20,
    inclusive,
15

16            Defendants.
    _____/

17

18

19              [PROPOSED] ORDER ON PLAINTIFF'S MOTION
                FOR AWARD OF APPELLATE ATTORNEY'S FEES
20         AND DEFENDANTS' MOTION TO TAX PLAINTIFF'S COSTS

21

22

23

24

25

26

27

28

[PROPOSED] ORDER ON PLAINTIFF'S MOTION FOR AWARD OF APPELLATE        EXHIBIT 1
ATTORNEY'S FEES AND DEFENDANTS' MOTION TO TAX PLAINTIFF'S COSTS
CASE NO. C01-01898

1    The motion of plaintiff PHIL LINZA for an award of appellate attorney's fees and the motion

2  of defendants PAUL COPANSKY and THE DIAMOND CENTER, INC., fka COPANSKY

3  ENTERPRISES, INC., to tax plaintiff's appellate costs came on regularly for hearing before the

4  Honorable Terence L. Bruiniers in Department 5 of the above-entitled court on August 25, 2006.

5  Stephanie Rubinoff of the firm Horowitz & Rubinoff appeared for plaintiff PHIL LINZA, individual

6  defendant PAUL COPANSKY appeared in propria persona, and Kenneth R. Pedroza of the firm

7  Thelen Reid & Priest LLP appeared for defendant THE DIAMOND CENTER, INC., fka COPANSKY

8  ENTERPRISES, INC.

9    These matters having been fully argued and considered and proof being made to the satisfaction

10  of the court, IT IS HEREBY ORDERED THAT:

11    Plaintiff's motion for award of appellate attorney's fees is granted in the amount of $358,581.00

12  (calculated on 907.8 hours at a rate of $395.00/hour). The hours claimed (1,003.6) are reduced for

13  time which appears excessive or which do not appear directly related to responding to defendants'

14  appeal, specifically regarding preparation for oral argument (- 40 hours), response to amicus briefs

15  (-5.4 hours), petitioning for late filing of exhibits (-10 hours), and for time properly allocated to

16  plaintiff's cross-appeal (40.4 hours). While defendants dispute the hourly rate claimed, the rate has

17  been shown to be within the reasonable range for counsel of similar experience. While not applying

18  a multiplier to the fee claim, the court notes that the contingent nature of the fee justifies a rate higher

19  than counsel's regular billing schedule.

20    With regard to defendants' motion to tax plaintiff's appellate costs, see the above order

21  regarding plaintiff's motion for award of appellate attorney's fees. The same issues were raised, and

22  arguments advanced as those presented in opposition to plaintiff's motion for award of appellate

23  attorney's fees. Defendants' motion to tax costs is granted to the extent set forth above, and otherwise

24  denied.

25    Therefore, plaintiff is awarded his appellate attorney's fees in the amount of $358,581.00 and

26  /   /   /

27  /   /   /

28  /   /   /

[PROPOSED] ORDER ON PLAINTIFF'S MOTION FOR AWARD OF APPELLATE
ATTORNEY'S FEES AND DEFENDANTS' MOTION TO TAX PLAINTIFF'S COSTS
CASE NO. C01-01898
                                                                            1

1  his appellate costs in the amount of $7,238.98 (as set forth in his Memorandum of Costs on Appeal,

2  filed on April 12, 2006, at Item Nos. 2, 3, 4, 7 and 8), for a total award of $365,819.98.

3

4  Dated: _____8/25/___, 2006

5                                          TERENCE L. BRUINIERS
                                           JUDGE OF THE SUPERIOR COURT

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER ON PLAINTIFF'S MOTION FOR AWARD OF APPELLATE
ATTORNEY'S FEES AND DEFENDANTS' MOTION TO TAX PLAINTIFF'S COSTS
CASE NO. C01-01898                                                    2

1

## PROOF OF SERVICE BY MAIL

2        I declare that I am employed in the County of Alameda, California. I am over the age of

3   eighteen years and not a party to the within cause; my business address is 1440 Broadway, Suite 607,

4   Oakland, California 94612-2026. On the date below, I served the within:

5      NOTICE OF ORDER ON PLAINTIFF'S MOTION FOR AWARD OF APPELLATE

6      ATTORNEY'S FEES AND DEFENDANTS' MOTION TO TAX PLAINTIFF'S COSTS

7   on the interested parties in said cause by placing a true copy thereof enclosed in a sealed envelope, with

8   postage thereon fully prepaid, in the United States Mail at Oakland, California, addressed as follows:

9                          John A. Chatowski
                        Thelen, Reid & Priest  LLP
10                      101 Second Street, Suite 1800
                        San Francisco, CA 94105-3606
11
                              Paul Copansky
12                        724 Blue Spruce Drive
                          Danville, CA 94506
13

14        I declare under penalty of perjury under the laws of the State of California that the foregoing

15   is true and correct, and that this declaration was executed on August 25   , 2006 at Oakland,

16   California.

17

18                                              _____
                                                    STEPHANIE RUBINOFF
19

20

21

22

23

24

25

26

27

28

## COPANSKY CHARITABLE REMAINDER TRUST

### TRUST AGREEMENT

### Article 1:   Creation of Trust

Section 1.01.  Parties.

This trust agreement is made by PAUL COPANSKY (hereinafter referred to as "the Donor" or the "settlor"), of Concord, California, and JAMES Q. FISHER (the "trustee"), as trustee.  The settlor hereby transfers and assigns to the trustee certain property (the "trust estate"), in trust, to be held, administered and distributed as provided in this instrument.

Section 1.02.  Purpose of Trust.

The Donor desires by this instrument to establish a charitable remainder unitrust within the  meaning of Internal Revenue Service Revenue Procedure 90-30 and Internal Revenue Code Section 664(d)(2).

Section 1.03.  Name of Trust.

The name of the trust created by this instrument shall be:

### COPANSKY CHARITABLE REMAINDER TRUST.

### Article 2:   Trust Estate

Section 2.01.  Definition of Trust Estate.

All property subject to this instrument from time to time is referred to as the "trust estate" and shall be held, administered, and distributed as provided in this instrument.  The trustee shall hold, administer and distribute the property described in Schedule A, any other property that may be hereafter subject to this trust, and the income and proceeds attributable to all such property, in accordance with the provisions of this instrument.

Section 2.02.  Trust Irrevocable; Limited Power of Amendment by Trustee.

The trust is irrevocable.  However, the trustee shall have the power, acting alone, to amend the trust in any manner required for the sole purpose of ensuring that the trust qualifies and continues to qualify as a charitable remainder annuity trust within the meaning of Internal Revenue Code Section 664(d)(2).

Section 2.03.  Removal of Trustee.

NADINE COPANSKY has the right to dismiss a trustee and appoint a successor trustee.  To remove the trustee pursuant to this provision, NADINE COPANSKY shall give the trustee thirty (30) days' written notice.  To appoint a successor trustee pursuant to this provision, NADINE COPANSKY shall give the successor trustee written notice of the appointment.

Deposition Exhibit  2
Deponent: Scribner
Date:  8/10/07

Reporter: Jane Grossman, CSR No. 5225

-1-

COPANSKY CHARITABLE REMAINDER TRUST

Article 3:   Payments and Distributions

Section 3.01.   Payment of Unitrust Amount.

In each taxable year of the trust, the trustee shall pay to
PAUL COPANSKY (hereinafter referred to as "the Recipient") during
his lifetime, a unitrust amount equal to 10.454% of the net fair
market value of the assets of the trust valued as of the first day
of each taxable year of the trust (the "valuation date"). Upon the
death of PAUL COPANSKY, then NADINE COPANSKY shall be the Recipient
entitled to receive the entire unitrust amount.

The unitrust amount shall be paid in equal monthly amounts
from income and, to the extent that income is not sufficient, from
principal.   Any excess income of the Trust for a taxable year in
excess of the unitrust amount may be distributed by the trustee to
the Charitable' Organization, at any time, at the direction or
approval of the Donor. Any excess income not distributed in this
manner shall be added to principal.

Section 3.02.   Valuation.

In computing the net fair market value of the trust assets,
all of the trust's assets and liabilities as of the date of the
computation shall be taken into account without regard to whether
particular items are taken into account in determining the income
or the principal of the trust.   All determinations of net fair
market value shall be made exclusively by the trustee, and the
trustee's decision, reached in good faith, shall be final and
binding upon all persons interested in the trust. If the net fair
market value of the trust assets is incorrectly determined, the
trustee shall, in the case of an undervaluation, pay to the
Recipient (or the personal representative of the Recipient) and, in
the case of an overvaluation, collect from the Recipient (or the
personal representative of the Recipient) an amount equal to the
difference between the amount that the trustee would have paid if
the correct value had been used and the amount that the trustee
actually paid.   Each adjustment is to be made within a reasonable
period after final determination of the value.

Section 3.03.   Proration of the Unitrust Amount.

In determining the unitrust amount, the Trustee shall prorate
the same on a daily basis for a short taxable year and for the
taxable year ending with the survivor Recipient's death.

Section 3.04.   Prohibition Against Certain Payments.

Except for the unitrust amount, or an amount transferred for
full and adequate consideration, no amount may be paid to or for
the use of any person other than an organization described in
Internal Revenue Code Sections 170(c), 2055(a) and 2522(a).

-2-



COPANSKY CHARITABLE REMAINDER TRUST

Section 3.05.   Payments When Additional Contributions Have Been Made.

In any taxable year in which additional property is contributed to the trust, the unitrust amount to be paid and the valuation to be made as described in Section 3.01 shall be computed in accordance with Treasury Regulations Section 1.664-3(b). If any additional contribution is made by will, the obligation to pay the unitrust amount with respect to that additional contribution shall commence with the date of death of the person under whose will the additional contribution is made, but payment of the additional amount may be deferred from the date of death until the end of the taxable year of the trust in which the complete funding of the additional contribution occurs. Within a reasonable time thereafter, the trustee shall, in the case of an underpayment, pay to the Recipient (or the personal representative of the Recipient) and, in the case of an overpayment, collect from the Recipient (or the personal representative of the Recipient) the difference between:

(a)   Any amount specified in Section 3.01 actually paid, plus interest, compounded annually, computed for a period at the rate of interest that the Treasury Regulations under Internal Revenue Code Section 664 prescribe for the trust for that computation for that period; and

(b)   The amounts payable as specified in Section 3.01, determined under the method described in Treasury Regulation Section 1.664-1(a)(5)(ii).

Section 3.06.   Acceleration of Distribution to Charitable Organization.

The trustee, upon receipt of written instruction or signed approval from the Donor, may accelerate the distribution of part or all of the trust assets to the Charitable Organization. If at the time of any such accelerated distribution the Charitable Organization is not a qualified organization then such distribution shall be cancelled or upon similar instruction and approval from the Donor may be made to a successor organization as described under Section 3.07 or 3.08, if and only if such distributee is a qualified organization. In the case of any distributions in kind to the Charitable Organization beneficiaries, the adjusted basis of the property distributed shall be fairly representative of the adjusted basis of the property available for distribution on the date of distribution.

Section 3.07.   Distribution to Charity.

Upon the death of the survivor Recipient, the trustee shall distribute all of the then principal and income of the trust (other

-3-

COPANSKY CHARITABLE REMAINDER TRUST

than any amount due to the survivor Recipient or the survivor
Recipient's estate under the provisions above), free of trust, to
the following entity: *AMERICAN CANCER SOCIETY AC*

(hereinafter referred to as "the Charitable Organization"), for its
general purposes. If the Charitable Organization is not an
organization described in Internal Revenue Code Sections 170(c),
2055(a) or 2522(a) at the time when any principal or income of the
trust is to be distributed to it, then the trustee shall distribute
such principal or income to any other named Charitable
Organizations that is an organization described in Internal Revenue
Code Sections 170(c), 2055(a) or 2522(a), and if none, to such one
or more organizations described in Internal Revenue Code Sections
170(c), 2055(a) or 2522(a) as the trustee shall select in the sole
discretion of the trustee, or any successor trustee.

Section 3.08.   Substitution of Charitable Organization.

The Donor and the Recipient reserve the power to:

(a)   Designate one or more substitute Charitable
Organizations provided that each such substitute Charitable
Organization is an organization described in Internal Revenue Code
Sections 170(c), 2055(a) or 2522(a).

(b)   Designate one or more additional Charitable
Organizations to receive a specified share of the trust, provided
that each such additional Charitable Organization is an
organization described in Internal Revenue Code Sections 170(c),
2055(a) or 2522(a).

(c)   Such designation may be exercised during Donor's
lifetime from time to time by written instrument filed with the
trustee, or by the survivor Recipient's will.

(d)   The latest dated designation document delivered to
the trustee shall control the name the Charitable Organization(s).

(e)   The currently named Charitable Organization(s) shall
be the Charitable Organization referred to in Section 3.07.

(f)   If a Charitable Organization is not an organization
described in Internal Revenue Code Sections 170(c), 2055(a) or
2522(a) at the time when any principal or income of the trust is to
be distributed to it, then the trustee shall distribute such
principal or income to any other named Charitable Organizations
that is an organization described in Internal Revenue Code Sections
170(c), 2055(a) or 2522(a), and if none, to such one or more
organizations described in Internal Revenue Code Sections 170(c),
2055(a) or 2522(a) as the trustee shall select in the sole
discretion of the trustee, or any successor trustee.

-4-



COPANSKY CHARITABLE REMAINDER TRUST

Section 3.09.    Payment of Federal Estate Taxes and State Death Taxes.

The lifetime unitrust interest of the survivor Recipient will continue in effect upon the death of the first Recipient to die only if the survivor Recipient furnishes the funds for payment of any federal estate taxes or state death taxes for which the Trustee may be liable upon the death of the first Recipient to die.

Section 3.10.    Spendthrift Clause.

The interests of the beneficiaries under this instrument are not transferable by voluntary or involuntary assignment or by operation of law, and shall be free from the claims of creditors and from attachment, execution, bankruptcy, and other legal process, to the maximum extent permitted by law.

Article 4:    Trustee

Section 4.01.  Successor Trustees.

If the office of trustee becomes vacant by reason of death, incapacity, or any other reason, and no successor trustee or cotrustees have been designated under any other provision of this trust instrument, the following, in the order of priority indicated, shall be trustee:

First,    UNION BANK OF CALIFORNIA.

If all those named above are unwilling or unable to serve as successor trustee, a new trustee or cotrustees shall be appointed by the court. Any individual trustee or cotrustee not specifically named in this section who is appointed under this section shall be appointed from among the issue of the settlor, unless no issue of the settlor is able and willing to serve.

Section 4.02.  Majority Vote of Co-Trustees.

When more than two (2) trustees are acting, the determination of a majority of them shall be controlling with respect to any matter affecting the trust. The dissenting trustees shall not be liable to any person for any action taken, or for the failure to take any action, pursuant to the decision of a majority of such trustees acting from time to time.

Section 4.03.  Trustee Designation of Co-Trustee or Successor.

Each individual trustee, while serving as trustee, shall have the power to designate one or more co-trustees to serve with the trustee, and may designate one or more successor trustees, to serve in the trustee's stead thus replacing any successor trustee named herein. If more than one trustee is serving, each serving trustee shall have the power to designate only one successor trustee, to serve in that trustee's stead, and any trustee may only designate

-5-

COPANSKY CHARITABLE REMAINDER TRUST

one or more co-trustees with the written consent of all trustees then serving. Any designation made hereunder shall supersede any prior designated successor of the designating trustee. Any designation, or withdrawal of a designation, of a successor trustee or co-trustee, and any relinquishment of this power, shall be made by delivering a signed, written instrument to any co-trustee. Said designation shall be effective as of the date thereof or such other date as indicated in said designation. No successor trustee shall be personally liable for any act or failure to act of a predecessor trustee.

Section 4.04.  Court to Appoint Successor Trustee.

If the office of trustee becomes vacant by reason of death, incapacity, or any other reason, and no successor trustee or co-trustees have been designated under any other provision of this trust instrument, a new trustee or co-trustees shall be appointed by the court.

Section 4.05.  Definition of "Trustee."

Reference in this instrument to "the trustee" shall be deemed a reference to whoever is serving as trustee or co-trustees, and shall include alternate or successor trustees or co-trustees, unless the context requires otherwise.

Section 4.06.  Waiver of Bond.

No bond or undertaking shall be required of any trustee named in this instrument.

Section 4.07.  Compensation of Trustee.

Each trustee shall be entitled to reasonable compensation for services rendered, payable without court order. Additional compensation in a reasonable amount may be proper to compensate a trustee for any extraordinary services rendered by the trustee, all without court order.

Section 4.08.  General Powers of Trustee.

To carry out the purposes of the trusts created under this instrument, and subject to any limitations stated elsewhere in this instrument, the trustee shall have all of the following powers, in addition to all of the powers now or hereafter conferred on trustees by law:

(a) Power to Retain Assets. Retain property received into the trust at its inception, or later added to the trust, as long as the trustee considers that retention in the best interests of the trust or in furtherance of the goals of the settlor in creating the trust, as determined from this trust instrument, but subject to the standards of the prudent investor rule as set forth in the



COPANSKY CHARITABLE REMAINDER TRUST

California Uniform Prudent Investor Act, as amended from time to time.

(b) **Power to Invest Trust Property.** Invest and manage the trust assets as a prudent investor would, by considering the purposes, terms, distribution requirements, and other circumstances of the trust. In satisfying this standard, the trustee shall exercise reasonable care, skill, and caution. The trustee's investment and management decisions respecting individual assets and courses of action must be evaluated not in isolation, but in the context of the trust portfolio as a whole and as a part of an overall investment strategy having risk and return objectives reasonably suited to the trust. Among circumstances that are appropriate to consider in investing and managing trust assets are the following, to the extent relevant to the trust or its beneficiaries:

(1) General economic conditions.

(2) The possible effect of inflation or deflation.

(3) The expected tax consequences of investment decisions or strategies.

(4) The role that each investment or course of action plays within the overall trust portfolio.

(5) The expected total return from income and the appreciation of capital.

(6) Other resources of the beneficiaries known to the trustee as determined from information provided by the beneficiaries.

(7) Needs for liquidity, regularity of income, and preservation or appreciation of capital.

(8) An asset's special relationship or special value, if any, to the purposes of the trust or to one or more of the beneficiaries.

The trustee may invest in any kind of property or type of investment or engage in any course of action or investment strategy consistent with the standards set forth in the California Uniform Prudent Investor Act, as set forth in California Probate Code Sections 16045-16054, or any successor sections.

(c) **Power to Invest in Investment Funds.** In the trustee's discretion, invest or reinvest in mutual funds, money market funds, investment trusts, regulated investment companies, market funds, and index funds, and in the shares or securities of any such funds or companies, that persons of prudence, discretion, and intelligence acquire for their own account.

-7-

COPANSKY CHARITABLE REMAINDER TRUST

(d) Power to Sell, Lease or Exchange Property. With or without court authorization, sell (for cash or on deferred payments, and with or without security), convey, exchange, partition, and divide trust property; grant options for the sale or exchange of trust property for any purpose, whether the contract is to be performed or the option is to be exercised within or beyond the term of the trust; and lease trust property for any purpose, for terms within or extending beyond the expiration of the trust, regardless of whether the leased property is commercial or residential and regardless of the number of units leased.

(e) Power to Manage Trust Property. Manage, control, improve, and maintain all real and personal trust property.

(f) Power to Develop or Subdivide Property. Subdivide or develop land; make or obtain the vacation of plats and adjust boundaries, or adjust differences in valuation on exchange or partition by giving or receiving consideration; and dedicate land or easements to public use with or without consideration.

(g) Power to Repair Trust Property. Make ordinary or extraordinary repairs or alterations in buildings or other trust property, demolish any improvements, raze existing party walls or buildings, and erect new party walls or buildings, as the trustee deems advisable.

(h) Power to Make Agreements Respecting Mineral Rights. Enter into oil, gas, and other mineral leases, on terms deemed advisable by the trustee; enter into any pooling, unitization, repressurization, community, or other types of agreements relating to the exploration, development, operation, and conservation of mineral properties; drill, mine, and otherwise operate for the development of oil, gas, and other minerals; contract for the installation and operation of absorption and repressuring plants; and install and maintain pipelines. Any such leases or agreements may be for a term within or extending beyond the term of the trust.

(i) Power to Abandon Assets. In the trustee's discretion, abandon any trust asset or interest therein.

(j) Power to Employ and Compensate Agents. Employ and discharge agents and employees, including but not limited to attorneys, accountants, investment and other advisers, custodians of assets, property managers, real estate agents and brokers, and appraisers, to advise and assist the trustee in the management of any trusts created under this trust instrument, and compensate them from the trust property. The agents and employees may be associated or affiliated with the trustee, or may be descendants or other persons related to the trustee or to the settlor, or a company associated with any such persons. The trustee is entitled to rely on the advice of any professional advisers employed under

-8-



COPANSKY CHARITABLE REMAINDER TRUST

this provision. Reasonable compensation paid to any such agents or employees shall not diminish the compensation to which the trustee is otherwise entitled.

(k) **Power to Manage Securities.** With respect to securities held in trust, exercise all the rights, powers, and privileges of an owner, including, but not limited to, the power to vote, give proxies, and pay assessments and other sums deemed by the trustee necessary for the protection of the trust property; participate in voting trusts, pooling agreements, foreclosures, reorganizations, consolidations, mergers, and liquidations, and, in connection therewith, deposit securities with and transfer title to any protective or other committee under such terms as the trustee deems advisable; exercise or sell stock subscription or conversion rights; and accept and retain as investments of the trust any securities or other property received through the exercise of any of the foregoing powers.

(l) **Power to Hold Securities or Other Property in Names of Nominee.** Hold securities or other trust property in the trustee's own name or in the name of a nominee, without disclosure of the trust, or in unregistered form, so that title may pass by delivery.

(m) **Power to Deposit Securities in Securities Depository.** Deposit securities in a securities depository that is either licensed or exempt from licensing.

(n) **Power to Borrow Money and Encumber Trust Assets.** Borrow money for any trust purpose from any person or entity, on such terms and conditions as the trustee deems advisable, and obligate the trust for repayment; encumber any trust property by mortgage, deed of trust, pledge, or otherwise, whether for terms within or extending beyond the term of the trust, as the trustee deems advisable, to secure repayment of any such loan; replace, renew, and extend any such loan or encumbrance; and pay loans or other obligations of the trust deemed advisable by the trustee.

(o) **Power to Insure Trust Against Loss.** Procure and carry, at the expense of the trust, insurance in such forms and in such amounts as the trustee deems advisable to protect the trust property against damage or loss, and to protect the trustee against liability with respect to third persons.

(p) **Power to Enforce Obligations Owed to Trust.** Enforce any obligation owing to the trust, including any obligation secured by a deed of trust, mortgage, or pledge held as trust property, and purchase any property subject to a security instrument held as trust property at any sale under that instrument.

(q) **Power to Extend Time for Payment of Obligations.** Extend the time for payment of any note or other obligation held as an

-9-



COPANSKY CHARITABLE REMAINDER TRUST

asset of, and owing to, the trust, including accrued 'or future interest, and extend the time for repayment beyond the term of the trust.

(r) **Power to Pay, Contest, Compromise or Release Claims.** Pay or contest any claim against the trust; release or prosecute any claim in favor of the trust; or, in lieu of payment, contest, release, or prosecution, adjust, compromise, or settle any such claim, in whole or in part, and with or without consideration.

(s) **Power to Commence or Defend Litigation.** At trust expense, prosecute or defend actions, claims, or proceedings of whatever kind for the protection of the trust property and of the trustee in the performance of the trustee's duties, and employ and compensate attorneys, advisers, and other agents as the trustee deems advisable.

Section 4.09.    Division or Distribution in Cash or in Kind.

In order to satisfy a pecuniary gift or to distribute or divide trust assets into shares or partial shares, the trustee may distribute or divide those assets in kind, or divide undivided interests in those assets, or sell all or any part of those assets and distribute or divide the property in cash, in kind, or partly in cash and partly in kind.   Property distributed to satisfy a pecuniary gift under this trust instrument shall be valued at its fair market value at the time of distribution.

Section 4.10.    Payments to Legally Incapacitated Persons.

If at any time it appears to the trustee that any trust beneficiary is incapacitated, incompetent, or for any other reason not able to receive payments or make intelligent or responsible use of the payments, then the trustee, in lieu of making direct payments to the trust beneficiary, may make payments to the beneficiary's conservator or guardian; to one or more suitable persons as the trustee deems proper, such as a relative of or a person residing with the beneficiary, to be used for the beneficiary's benefit; to any other person, firm, or agency for services rendered or to be rendered for the beneficiary's assistance or benefit; or to accounts in the beneficiary's name with financial institutions. The receipt of payments by any of the foregoing shall constitute a sufficient acquittance of the trustee for all purposes.

Section 4.11.    Grant of Specific Powers Not to Limit Exercise of General Powers.

The enumeration of specific powers under this trust instrument shall not limit the trustee from exercising any other power with respect to any trusts created by this trust instrument that may be necessary or appropriate for the trustee to have and exercise in

-10-

COPANSKY CHARITABLE REMAINDER TRUST

order to carry out the purposes of the trusts or to permit the trustee to fulfill the trustee's responsibilities and duties with respect to the trust.

Section 4.12.   Limitations on Trustee's Powers.

Notwithstanding any other provision of this instrument, the trustee shall not:

(a) Engage in any act of self-dealing as defined in Internal Revenue Code Section 4941(d) or make any taxable expenditure as defined in Internal Revenue Code Section 4945(d), except for the payment of the annuity amount;

(b) Make any investments that jeopardize the charitable purpose of the trust, within the meaning of Internal Revenue Code Section 4944, or retain any excess business holdings, within the meaning of Internal Revenue Code Section 4943;

(c) Hold or exercise any power or discretion which is in conflict with the provisions of Internal Revenue Code Section 664 or the regulations thereunder, or with any specific provision of this instrument.

After the termination of all noncharitable interests, there shall be distributed amounts at least sufficient to avoid liability for the tax imposed by Internal Revenue Code Section 4942(a).

Section 4.13.   Realization of Reasonable Income and Gain.

Nothing in this trust instrument shall be construed to restrict the trustee from investing the trust assets in a manner that could result in the annual realization of a reasonable amount of income or gain from the sale or disposition of trust assets.

Section 4.14.   Power to Disclaim or Release Powers.

The trustee may disclaim, release, or restrict the scope of any power or discretion that the trustee may hold in connection with any trust created under this instrument, whether the power or discretion is expressly granted in this instrument or is implied by law.   The trustee shall disclaim a power in the manner required by applicable federal or California law.   The trustee shall release or restrict any power or discretion by giving written notice to the beneficiary or beneficiaries then entitled to current distribution of income from the trust, specifying the power or discretion to be released or restricted, the nature of the restriction, and, if appropriate, the person or persons to whom the released or restricted power shall pass and be exercisable.   If a power is disclaimed, the power shall be available to and exercisable by the other trustee or trustees.

COPANSKY CHARITABLE REMAINDER TRUST

Section 4.15.  Duty to Account.

The trustee shall render accounts at least annually, at the termination of a trust, and upon a change of trustees, to the persons and in the manner required by law.

Section 4.16.  Allocation of Income and Principal.

The trustee shall determine what is income and what is principal of each trust created under this Trust Agreement, and what expenses, costs, taxes, and charges of any kind whatsoever shall be charged against income and what shall be charged against principal in accordance with the applicable statutes of the State of California as they now exist and may from time to time be enacted, amended, or repealed.

Section 4.17.  Relations With Trustee.

No one dealing with the trustee need inquire concerning the validity of anything the trustee purports to do, or need see to the application of any money paid or any property transferred to or upon the order of the trustee.

Section 4.18.  Limitation of Trustee's Liability.

No trustee shall at any time be held liable for any action or default of the trustee or the trustee's agent or of any other person in connection with the administration of the trust estate, unless caused by the trustee's own gross negligence or by a willful commission by the trustee of an act in breach of trust.

Article 5:  Concluding Provisions

Section 5.01.  Definition of Incapacity.

For purposes of this instrument, a person shall be deemed "incapacitated" if and for so long as a court of competent jurisdiction has made a finding to that effect, or a guardian or conservator of that person's estate or person duly appointed by a court of competent jurisdiction is serving, or upon certification by two (2) physicians (licensed to practice under the laws of the state where the person is domiciled at the time of the certification) that the person is unable properly to care for himself or herself or for his or her property.  The latter certification shall be made by each physician in a written declaration under penalty of perjury.

Section 5.02.  Number and Gender.

As used in this instrument, references in the masculine gender shall be deemed to include the feminine and neuter gender, and vice versa, and references to the singular shall be deemed to include the plural, and vice versa, wherever the context so permits.

COPANSKY CHARITABLE REMAINDER TRUST

Section 5.03.    Captions.

The captions appearing in this instrument are for convenience of reference only, and shall be disregarded in determining the meaning and effect of the provisions of this instrument.

Section 5.04.    Severability Clause.

If any provision of this instrument is invalid, that provision shall be disregarded, and the remainder of this instrument shall be construed as if the invalid provision had not been included.

Section 5.05.    California Law to Apply.

All questions concerning the validity, interpretation, and administration of this instrument, including any trusts created under this instrument, shall be governed by the laws of the State of California, regardless of the domicile of any trustee or beneficiary.

Section 5.06.    Taxable Year.

The taxable year of the trust shall be the calendar year.

Article 6:  Execution

Section 6.01.    Execution.

We certify that we have read the foregoing trust agreement and that it correctly states the terms and conditions under which the trust estate is to be held, administered and distributed.  The settlors approve this trust agreement in all particulars.  The trustees approve and accept the trust provided for in this trust agreement.

Executed on July 3, 2001, at Concord, California.

SETTLOR                          TRUSTEE


PAUL COPANSKY                    JAMES Q. FISHER

-13-

COPANSKY CHARITABLE REMAINDER TRUST

SCHEDULE A

SCHEDULE OF TRUST ASSETS

COPANSKY CHARITABLE REMAINDER TRUST

Description of Asset

Two Thousand Four Hundred Sixty (2,460) Shares of the Common Stock of COPANSKY ENTERPRISES, INC., a California corporation

-14-

# STOCK ASSIGNMENT SEPARATE FROM CERTIFICATE

FOR VALUE RECEIVED, the undesigned hereby transfers unto:

JAMES Q. FISHER, Trustee of the COPANSKY CHARITABLE REMAINDER TRUST

Two Thousand Four Hundred Sixty (2,460) Shares of the Common Stock of COPANSKY ENTERPRISES, INC., a California corporation, standing in the name of MELVIN PAUL COPANSKY on the books of said Corporation, represented by certificate No. 2 herewith and do hereby irrevocably constitute and appoint the Secretary of the corporation to transfer the said stock on the books of the within named Corporation with full power of substitution.

Dated:  July 3, 2001

_____
MELVIN PAUL COPANSKY

## RESIGNATION OF TRUSTEE

I hereby resign as Trustee of the COPANSKY CHARITABLE REMAINDER TRUST dated July 3, 2001, effective the date of this document.

Dated: _August 15_, 2001.

_____
JAMES Q. FISHER

## CONSENT TO ACT AS SUCCESSOR TRUSTEE

Pursuant to the provisions of Section 4.01 of ARTICLE 4 of the COPANSKY CHARITABLE REMAINDER TRUST dated July 3, 2001, and the Resignation of JAMES Q. FISHER as Trustee, the undersigned hereby consents to act as successor Trustee of the COPANSKY CHARITABLE REMAINDER TRUST.

Dated: _____August 15_____, 2001.

UNION BANK OF CALIFORNIA

By: _____

SUSAN DEHNER SCRIBNER
VICE PRESIDENT & SENIOR TRUST OFFICER



THE
PRIVATE
BANK

San Francisco Private Bank

Paul Copansky
724 Blue Spruce Drive
Danville, CA 94526-4525

Re: Union Bank of California, Trustee of Copansky Charitable Remainder Trust
     Dated July 3, 2001
     Trust Account # 6702000630

Dear Mr. Copansky:

With respect to the referenced trust of which Union Bank of California is Trustee, this
will confirm the following points:

- The trust is a separate entity
- The trust has its own tax identification number
- The trust files its own tax returns
- The trust is governed by the underlying trust document and you have no control
  over the corpus of the trust
- The trust is an irrevocable trust with a charity as the recipient of the remainder
  interest.

I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

Executed on _January 13, 2006_ at _San Francisco, California_

By: _____
Susan Dehner Scribner, CFP, AEP
Vice President & Senior Trust Officer
(415) 705-7174

Deposition Exhibit _1_
Deponent: _SCRIBNER_
Date: _9-10-07_

Reporter: Jane Grossman, CSR No. 5225

BANKING SERVICES · TRUSTS · INVESTMENT MANAGEMENT
350 California Street, Eighteenth Floor, San Francisco, California 94104
Tel 415-705-7222   888-878-7823   Fax 415-705-7129

1          Do you have that document?

2     A.    I believe I do.  The trust document is in this

3  package (indicating).  It's the agreement and the

4  resignation of the prior trustee.

5          MR. BARTLETT:  For the record, this will be

6  labeled as Plaintiff's No. 2.  This is the "COPANSKY

7  CHARITABLE REMAINDER TRUST TRUST AGREEMENT."  It is 14

8  pages long, and then it's -- there's also a separate

9  "STOCK ASSIGNMENT SEPARATE FROM CERTIFICATE," dated

10  July 3rd, 2001.

11          If we could just go off the record for a

12  moment.

13              (Deposition Exhibit 2 was marked for

14               identification.)

15          MR. BARTLETT:  Back on the record.

16          I'll also note for the record that this

17  particular document, in addition to as already

18  described, has a "SCHEDULE A SCHEDULE OF TRUST ASSETS,"

19  a "STOCK ASSIGNMENT SEPARATE FROM CERTIFICATE" form, a

20  "RESIGNATION OF TRUSTEE" by James Fisher, and "CONSENT

21  TO ACT AS SUCCESSOR TRUSTEE" by, it appears to be, Union

22  Bank of California.  That's dated August 15, 2001.

23     Q.    Ms. Scribner, have there been any amendments

24  to this trust?

25     A.    No.

ORDER OF EXAMINATION HEARING OF SUSAN DEHNER SCRIBNER

1      Q.   No addendums?

2      A.   No.   It's an irrevocable trust that cannot be

3    amended.

4      Q.   Now, I note under Section 3.01 of the trust

5    there's a clause that talks about making payments to

6    Paul Copansky equal to 10.45 percent of the net fair

7    market value on a monthly basis each year.

8           Has Union Bank been doing that?

9      A.   Yes.

10     Q.   Where are those payments sent?

11     A.   They're sent into a bill-paying account to pay

12   their household bills.

13     Q.   And is that account also at Union Bank?

14     A.   Yes.

15     Q.   I have a few basic questions about this trust.

16   I'm not asking for a legal opinion.

17          I notice that on the first page it indicates

18   that the settlor of this trust is Paul Copansky, and then

19   on page 2, which has 3.01, it indicates that the

20   recipients of payments are Paul Copansky.

21          Is there actually a beneficiary named under

22   this trust or just the recipient?

23     A.   He is the beneficiary.

24     Q.   Okay.   I took a look at this document, and I

25   didn't see the word "beneficiary" anywhere.

ORDER OF EXAMINATION HEARING OF SUSAN DEHNER SCRIBNER

THE
PRIVATE
BANK

Palo Alto Private Bank

January 24, 2007

Mr. Paul Copansky
724 Blue Spruce Dr
Danville, CA 94526

RE: Copansky Charitable Remainder Unitrust #6702000630

Dear Paul,

As you know, the above referenced account must be re-valued and disbursements changed as of the end of each calendar year. The valuation is as follows:

| | |
|---|---|
| Actual Market Value as of 12/31/06 | $3,591,408.24 |
| Plus overpayment from 2006 | 3,730.17 |
| Market Value for 2007 Valuation | $3,595,138.41 |
| Yearly Unitrust Payment Calculation | $3,595,138.41 |
| x 10.454% = | $375,835.77 |
| Less overpayment from 2006 | 3,730.17 |
| 2007 Unitrust payment annual amount | $372,105.60 |
| Monthly payment (Yearly Calculation/12) | $31,008.80 |

The overpayment from 2006 amount above was due to the fact that the calculation for 2005 was not modified until later in the year. Additionally, the market value used was a little different so the net impact was that you were overpaid by $3,730.17 for 2006. So this amount needs to be added into the year-end calculation for valuation purposes but then deducted once the unitrust amount was calculated for 2007, or we would have the same problem next year. Therefore, your new monthly amount will be $31,008.80.

Please let me know if you need additional clarification on how the calculation above was made.

Regards,

Debra P. Lepold
Vice President & Regional Mgr.
650 859-1228

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address): | TELEPHONE NO.: | FOR RECORDER'S USE ONLY |
|---|---|---|

Recording requested by and return to:

— Bartlett & Leader-Picone, LLP
2201 Broadway, Suite 803
Oakland, CA 94612

ATTORNEY FOR (Name):

NAME OF COURT: Contra Costa Superior - Martinez
STREET ADDRESS: 725 Court St P.O. Box 911
MAILING ADDRESS:
CITY AND ZIP CODE: Martinez, CA 94553
BRANCH NAME:

PLAINTIFF: Phil Linza

DEFENDANT: The Diamond Center, Inc fka Copansky Enterprises, Inc et al

### MEMORANDUM OF GARNISHEE
(Attachment —Enforcement of Judgment)

LEVYING OFFICER (Name and Address):

San Francisco Sheriff Civil Section
1 Dr. Carlton B. Goodlett PL
Rm 456 Civil Divison
San Francisco, CA 94102
(415) 554-7235

**NOTICE TO PERSON SERVED WITH WRIT AND NOTICE OF LEVY OR NOTICE OF ATTACHMENT:** This memorandum must be completed and mailed or delivered to the levying officer within 10 days after service on you of the writ and notice of levy or attachment unless you have fully complied with the levy. Failure to complete and return this memorandum may render you liable for the costs and attorney fees incurred in obtaining the required information.
– RETURN ALL COPIES OF THIS MEMORANDUM TO THE LEVYING OFFICER –

| LEVYING OFFICER FILE NO.: | COURT CASE NO.: |
|---|---|
| 2007341266 | C0101898 |

This memorandum does *not* apply to garnishment of earnings.

1. If you will not deliver to the levying officer any property levied upon, describe the property and the reason for not delivering it:

## NO ACCOUNTS
## AT OFFICE SERVED

2. For writ of execution only    Describe any property of the judgment debtor not levied upon that is in your possession or under
your control:

N/A

3. If you owe money to the judgment debtor which you will not pay to the levying officer, describe the amount and terms of the
obligation and the reason for not paying it to the levying officer:



Michael Hennessey
Sheriff

Garnishee:
Union Bank
400 California Street
San Francisco, CA 94104

RETURN TO LEVYING OFFICER

Form Approved by the
Judicial Council of California
AT-167, EJ-152 [New July 1, 1983]

MEMORANDUM OF GARNISHEE
(Attachment — Enforcement of Judgment)

WEST GROUP
Official Publisher

CCP 4BB.610
701.030

W
I
T
N
E
S
S

L
E
T
T
E
R

1      A.   -- funds.   Because the money is designated for

2  a charity.

3           Now, on the other question, yes, it has Paul

4  Copansky down there as receiving X amount of money.

5           Now -- but you can check with Union Bank on

6  this.

7           My wife happens to be 9 years older than me.

8  There was a mistake made.  And Marty Horowitz already

9  checked this out, and he knows I'm telling the truth.

0  That was never supposed to be Paul Copansky, that money

1  was never ever -- it was to go strictly to Nadine

2  Copansky, because she is nine years older.   She had

3  cancer.

4           The guy that set it up, put it to me.   Martin

5  Horowitz --

6      Q.   But --

7      A.   Wait a minute.

8           -- went to Union Bank and got a record.   His

9  record, he got 28 months in a row, and he saw that the

0  interest -- an interest check was cut from the charity

1  trust, it hit Paul Copansky's account for 30 seconds,

2  and immediately went into Nadine Copansky's account.

3  And he has that record in that.

4           THE COURT:   That may be a significant 30

5  seconds.   That's why he's entitled to ask you the

ORDER OF EXAMINATION OF PAUL COPANSKY

31

WITNESS LETTER

question.

MR. COPANSKY:  But I'm not going to let him say
something in front of you that I'm not going to -- I
just don't --

THE COURT:  You can explain it, but you need to
answer these questions.

MR. COPANSKY:  And irregardless of that, what
is amazing how -- I can understand him wanting to know
my income and my work.

It's already been established that he doesn't
want to look at it.  He already has all of my documents.
He knows 80 percent of my assets, the plaintiffs have
already gotten.

So he knows I'm cash broke.  When I lost the
3 million that was taken from me from this court.  He
already knows I'm 700,000 in debt with no income.

Now, I'm going to let him keep going on with
this charity?  At some point, I'm going to get very
upset.  Okay?  Because he has no business going into the
charity trust when they knew five years ago the charity
trust wasn't my assets.

It's not -- it has already been given --

THE COURT:  I'm sorry.  We're not talking about
the assets within the trust, Mr. Copansky.  We're
talking about the assets that come out of the trust.

ORDER OF EXAMINATION OF PAUL COPANSKY

32

W:\CLIENT FILES\L\LO L\LINZA\PLEADINGS CENTERWIDE\PLEADINGS\ORDER_ASSIGNMENT 122607.MJ.DOC 12/26/07

1  BARTLETT, LEADER-PICONE & YOUNG, LLP
   ROBERT S. BARTLETT (State Bar No. 79752)
2  2201 BROADWAY, SUITE 803
   OAKLAND, CA 94612
3  TELEPHONE: (510) 444-2404
   FACSIMILE: (510) 444-1291
4
   Attorneys for Plaintiff
5  PHIL LINZA

6

7

8              SUPERIOR COURT FOR THE STATE OF CALIFORNIA

9              COUNTY OF CONTRA COSTA, MARTINEZ BRANCH

10 PHIL LINZA,                          ) No. C01-01898
                                        )
11          Plaintiff,                   )
                                        ) ORDER RE ASSIGNMENT OF RIGHTS,
12 v.                                    ) RESTRAINING ORDER AND
                                        ) TURNOVER ORDER
13 THE DIAMOND CENTER, INC., fka        )
   COPANSKY ENTERPRISES, INC., a        )
14 corporation, et al.,                 ) Date:  12/27/07
                                        ) Time:  8:30 a.m.
15          Defendants.                  ) Dept.: 30
                                        )
16 ─────────────────────────────────────

17          The motion of the Judgment Creditor, PHIL LINZA, for an order re assignment of

18 rights, restraining order, and turnover order came on regularly for hearing before this court on

19 December 27, 2007 after notice given according to law.  There was no written response opposing the

20 motion.   Robert S. Bartlett appeared for the moving party.   There was no appearance by the

21 Defendant. The court having considered the motion and good cause appearing,

22          IT IS ORDERED that:

23          1.   Judgment Debtor, PAUL COPANSKY shall forthwith assign to Judgment

24 Creditor, PHIL LINZA, through the law office of Bartlett, Leader-Picone & Young, LLP, 2201

25 Broadway, Suite 803, Oakland, CA 94612 the following rights to payment to the extent necessary to

26 fully pay and satisfy the Court Order in this matter, with all accrued interest and costs:

27

28                                     Exhibit ___B___

─────────────────────────────────────────────────────────────────────────────
ORDER RE ASSIGNMENT OF RIGHTS                              Case No. C01-01898
                                   -1-

a.   Any and all rights to payments as they become due from the Copansky Charitable Remainder Trust to Paul Copansky or his designee, Ivy Nadine Copansky.

2.   That Union Bank of California, as Trustee of the Paul Copansky Charitable Remainder Trust, turn over to Plaintiff's co-counsel, Bartlett, Leader-Picone & Young, LLP, 2201 Broadway, Suite 803, Oakland, CA 94612, the payments described above in paragraph 1.a. for custody and release to the Judgment Creditor. The turn over of the above-described property by the trustee of the Copansky Charitable Remainder Trust, Union Bank of California, must occur within 10 days of the vesting of the Judgment Debtor's rights or the Judgment Debtor's designee's rights, Ivy Nadine Copansky, to such property. Turnover shall be in the form of a Bank Draft made payable to the "Bartlett, Leader-Picone & Young, LLP Attorney-Client Trust account", and mailed or delivered to the law firm's address.

3.   Paul Copansky shall provide a monthly accounting to Plaintiff's co-counsel Robert S. Bartlett, Bartlett, Leader-Picone & Young, LLP, 2201 Broadway, Suite 803, Oakland, CA 94612, of any and all funds sent by Union Bank of California as Trustee of the Paul Copansky Charitable Remainder Trust to Paul Copansky, to Ivy Nadine Copansky or to the Ivy Nadine Copansky bill payor account at Union Bank of California, Palo Alto branch.

6.   This Order shall remain in full force and effect until the sum of $94,346.97, plus interest at the rate of 10% per annum from August 29, 2007, is paid in full.

DATED:   ___JAN 0 3 2008___, 2007       DIANA BECTON SMITH
                                        JUDGE OF THE SUPERIOR COURT


FAILURE TO COMPLY WITH THIS ORDER MAY SUBJECT THE JUDGMENT

DEBTOR, PAUL COPANSKY, TO BEING HELD IN CONTEMPT OF COURT

1  BARTLETT, LEADER-PICONE & YOUNG, LLP
   Robert S. Bartlett *(State Bar No. 79752)*
2  Malcolm Leader-Picone *(State Bar No. 104620)*
   2201 Broadway, Suite 803
3  Oakland, CA  94612
   Telephone: (510) 444-2404
4  Facsimile: (510) 444-1291

5  Attorneys for Plaintiff/Judgment Creditor
   PHIL LINZA
6

7                SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                       COUNTY OF CONTRA COSTA
9
10                         MARTINEZ BRANCH

11
   PHIL LINZA,                          )  No.  C01-01898
12                                      )
             Plaintiff,                 )  **JUDGMENT CREDITOR'S**
13                                      )  **OPPOSITION TO DEFENDANTS'** *EX*
   vs.                                  )  *PARTE* **REQUEST FOR STAY OF**
14                                      )  **ASSIGNMENT ORDER;**
   THE DIAMOND CENTER, INC., fka        )  **DECLARATION IN SUPPORT**
15 COPANSKY ENTERPRISES, INC., a        )  **THEREOF.**
   corporation; PAUL COPANSKY, an       )
16 individual                          )
                                        )  Date:  January 18, 2008
17           Defendants.                )  Time:  1:30 p.m.
                                        )  Dept:  60
18                                      )        Hon. Judith Sanders
                                        )
19 _____ )

20        MEMORANDUM IN OPPOSITION TO *EX PARTE* REQUEST FOR STAY

21
22              I.      PRELIMINARY STATEMENT.

23            Judgment debtor Paul Copansky has given notice that he will appear before the Court

24 on an *ex parte* basis to seek a stay of the Court's order entered on January 9, 2008, assigning payments

25 to Mr. Copansky from a trust of which Union Bank of California is the trustee. Since there is no basis

26 in law or equity for issuance of such a stay, plaintiff and judgment creditor Phil Linza opposes the

27 issuance of such a stay.

28

   OPPOSITION TO *EX PARTE* STAY                              Case No. C01-01898

## II.    STATEMENT OF FACTS.

As set forth in the Declaration of Robert S. Bartlett that follows, plaintiff/judgment creditor brought a motion for an order to require Union Bank, as trustee of the Paul Copansky Charitable Remainder Trust, to turn over to plaintiff's counsel all monthly payments it otherwise paid to Mr. Copansky until the judgment is satisfied in full. The motion was set for hearing on December 27, 2007 and Mr. Copansky failed to file any opposition to the motion.

On December 26th, with the Court's tentative ruling granting the motion posted, Mr. Copansky belatedly emailed plaintiff's counsel a copy of papers seeking a continuance of the hearing. (A copy of those papers is attached as Exhibit "A".) On December 27th, Mr. Copansky came to Department 30 where the hearing was to be held, spoke to the Clerk, and then left the courtroom, not to be seen again that morning. The Court took the motion under submission and later issued an order, a copy of which is attached as Exhibit "B".

## III.    ARGUMENT.

### A.    THERE IS NO AUTHORITY FOR ISSUANCE OF A STAY OF AN ORDER PENDING THE FILING OF A MOTION FOR RECONSIDERATION.

Mr. Copansky seeks a stay of the Court's January 9, 2008 order "to allow time for the defendants motion for reconsideration to be reviewed or heard by the court." The Court cannot issue a stay for several reasons. First of all, plaintiff's counsel have not been able to locate any cases authorizing the issuance of a stay of an order pending reconsideration of a ruling, and Mr. Copansky has offered no authority.

Secondly, defendants have not yet filed a motion for reconsideration and, even if they had, there is no basis for reconsideration of an order that defendants failed to oppose in the first instance.

Code of Civil Procedure section 1008(a) provides that: "When an application for an order has been made to a judge, or to the court, and refused in whole or in part, or granted, or granted conditionally, or on terms, any party affected by the order may, within ten (10) days after knowledge of the order and based upon an alleged different state of facts may [sic], make application to the same

---

OPPOSITION TO *EX PARTE* STAY                                      Case No. C01-01898

judge who made the order, to reconsider the matter and modify, amend or revoke the prior order."

If the requirements of section 1008 have not been met, the motion for reconsideration must be denied. *Blue Mountain Development Co. v. Carville* (1982) 132 Cal.App.3d 1005, 1011-1012. As used in section 1008, the phrase "alleged different state of facts" means "that the party seeking reconsideration must provide not only new evidence **but also a satisfactory explanation for the failure to produce that evidence at an earlier time**." *Blue Mountain Development Co. v. Carville, supra*, 132 Cal.App.3d at p. 1013; emphasis added.

Obviously, when a party fails to file any opposition to a motion, it cannot complain that a "different state of facts exists" under section 1008; nor can it satisfactorily explain its failure to present the facts at an earlier time. By not filing any timely opposition to the motion, Mr. Copansky cannot seek reconsideration of the ruling.

Consequently, there is no basis for this Court to issue the *ex parte* stay that is being requested.[1]

## IV.   CONCLUSION.

For the foregoing reasons, the Court should reject Mr. Copansky's *ex parte* application.

DATED: January 17, 2008.

BARTLETT, LEADER-PICONE & YOUNG, LLP

BY: _____
MALCOLM LEADER-PICONE
Attorneys for Plaintiff/Judgment Creditor
PHIL LINZA

---

[1] Were the Court to consider issuance of a stay, it should require the posting of a bond for full amount of the judgment, plus attorney's fees and costs of collection. See, *Code Civ. Proc.*, § 917.1.

OPPOSITION TO *EX PARTE* STAY

-3-

Case No. C01-01898

## DECLARATION OF ROBERT S. BARTLETT

I, Robert S. Bartlett, declare:

1.    I am an attorney at law, licensed to practice before this Court, and counsel for plaintiff herein. I have personal knowledge of the matters stated herein and, if sworn, could and would testify competently thereto.

2.    On November 16, 2007, I filed a motion pursuant to Code of Civil Procedure sections 708.510-708.560 for an Order directing that (1) Paul Copansky, the defendant, assign to the judgment creditor, his rights to payment due or to become due to the judgment debtor from Union Bank of California; (2) the judgment creditor requests that Paul Copanksy provide a monthly accounting to the judgment creditor of all funds the judgment debtor receives from Union Bank of California; (3) the judgment creditor requests that the monthly accounting described above include any and all payments received by Ivy Nadine Copanksy from Union Bank of California as authorized and directed by Paul Copansky and as further described in this motion and  (4) the judgment creditor, pursuant to CCP 708.540, requests that the court direct Union Bank of California, an obligor, to turnover directly to the judgment creditor, their attorney or any other party so authorized by the Court, any and all monthly payments sent by Union Bank of California to Paul Copansky or his designate, Ivy Nadine Copanksy, from the Copansky Charitable Remainder Trust. The clerk assigned a hearing date for the motion of December 27, 2007 at 8:30 a.m. in Department 30.

3.    On November 21, 2007, the moving papers were served on Mr. Copansky with the specified hearing date.

4.    Any opposition to the motion was due on December 13, 2007. I did not receive any opposition by that date or at any time thereafter.

5.    On December 26, 2007, the court published a tentative ruling online that the motion was granted.

6.    On December 26, 2007, despite not having filed a timely opposition to the motion, Mr. Copansky emailed to me a document entitled "Defendants [sic] Request for 30 Day

Continuous [sic] to Retain Attorney to File Opposition to Plaintiffs [sic] Motion: Paul Copansky Declaration in Support of Request". A true and correct copy of that document is attached hereto as Exhibit "A". Mr. Copansky also called me and told me something about appearing on December 27th to file for a continuance.

7.    On December 27, 2007, I appeared in Department 30 of this Court for the hearing on the motion. I arrived in Department 30 before the Judge took the bench and I observed Mr. Copansky engaged in an excited conversation with the Clerk. After a while Mr. Copansky left the courtroom and he did not return to Department 30 that morning at any time prior to the Judge taking the bench nor at any time during the calendar. The Judge that morning was from a different department and started very late. At the conclusion of the calendar, at around 10:30 a.m., the Judge had not called this case, but at that time I brought my motion to the Court's attention and the Judge took it under submission.

8.    I was subsequently contacted by the Clerk concerning the form of order and I submitted a revised form of Order. On January 3, 2008, Judge Diana Becton Smith signed an order granting the following relief:

1. Judgment Debtor, PAUL COPANSKY shall forthwith assign to Judgment Creditor, PHIL LINZA, through the law office of Bartlett, Leader-Picone & Young, LLP, 2201 Broadway, Suite 803, Oakland, CA 94612 the following rights to payment to the extent necessary to fully pay and satisfy the Court Order in this matter, with all accrued interest and costs:

a. Any and all rights to payments as they become due from the Copansky Charitable Remainder Trust to Paul Copansky or his designee, Ivy Nadine Copansky.

2. That Union Bank of California, as Trustee of the Paul Copansky Charitable Remainder Trust, turn over to Plaintiff's co-counsel, Bartlett, Leader-Picone & Young, LLP, 2201 Broadway, Suite 803, Oakland, CA 94612, the payments described above in paragraph 1.a. for custody and release to the Judgment Creditor. The turn over of the above-described property by the trustee of the Copansky Charitable Remainder Trust, Union Bank of California, must occur within 10 days of the vesting of the Judgment Debtor's rights or the Judgment Debtor's designee's rights, Ivy Nadine Copansky, to such property. Turnover shall be in the form of a Bank Draft made payable to the "Bartlett, Leader-Picone & Young, LLP Attorney-Client Trust account", and mailed or delivered to the law firm's address.

3. Paul Copansky shall provide a monthly accounting to Plaintiff's co-counsel Robert S. Bartlett, Bartlett, Leader-Picone & Young, LLP, 2201 Broadway, Suite 803, Oakland, CA 94612, of any and all funds sent by Union Bank of

\\BL-PSERVER2\BL-P FILES\CLIENT FILES\TO LUENZA, P\DIAMOND CENTER\MOTIONS\OPP-EX PARTE 011708.MLP.DOC

California as Trustee of the Paul Copansky Charitable Remainder Trust to Paul Copansky, to Ivy Nadine Copansky or to the Ivy Nadine Copansky bill payor account at Union Bank of California, Palo Alto branch.

6. This Order shall remain in full force and effect until the sum of $94,346.97, plus interest at the rate of 10% per annum from August 29,2007, is paid in full.

9.    a true and correct copy of the Order is attached hereto as Exhibit "B".

10.    Notice of the order was served on Mr. Copansky, on Ivy Copansky and on Union Bank by mail on January 14, 2008. Mr. Copansky's *ex parte* paper reflects the fact that he is in possession of a copy of the order.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED:  January 17, 2008.

ROBERT S. BARTLETT

\\BL-PSERVER2\BL-P FILES\CLIENT FILES\1 TO L\LINZA, P\DIAMOND CENTER\MOTIONS\PBH EX PARTE 011708 MLP.DOC

## PROOF OF SERVICE BY MAIL

I, Malcolm Leader-Picone, declare that:

I am employed in the County of Alameda, California. I am over the age of eighteen years and not a party to the within action. My business address is 2201 Broadway, Suite 803 Oakland, CA 94612. On January 17, 2008, I served the following document(s) entitled:

**JUDGMENT CREDITOR'S OPPOSITION TO DEFENDANTS' *EX PARTE* REQUEST FOR STAY OF ASSIGNMENT ORDER; DECLARATION IN SUPPORT THEREOF.**

upon the following person(s) in said action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States mail at Oakland, California addressed as follows, and by facsimile transmission to the listed telephone number(s):

> Paul Copansky
> 724 Blue Spruce Drive
> Danville, CA  94506

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at Oakland, California, on January 17, 2008.

_____
Malcolm Leader-Picone

PROOF OF SERVICE                                    Case No.  C01-01898

1   LEE P. BARDELLINI, ESQ. (S.B. # 53108)
    **BARDELLINI, STRAW & CAVIN**
2   3160 Crow Canyon Road, Suite 295
    San Ramon, CA 94583-1331
3
    Telephone: (925) 277-3580
4   Facsimile: (925) 277-3591

5   Attorneys for Defendant
    THE DIAMOND CENTER, INC.
6   fka COPANSKY ENTERPRISES, INC.

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   IN AND FOR THE COUNTY OF CONTRA COSTA

10

11                              ---o0o---

12   PHIL LINZA                      )      Case No. C01-01898
                                     )
13              Plaintiff,           )
                                     )
14       v.                          )      DECLARATION OF LOWELL
                                     )      KLEINMAN, M.D. IN SUPPORT OF
15   M. PAUL COPANSKY;               )      MOTION FOR NEW TRIAL
     COPANSKY ENTERPRISES            )
16   and DOES 1 through 20, inclusive,)
                                     )
17              Defendants.          )
     _____ )
18

19       I, LOWELL KLEINMAN, M.D., declare:

20       1.      I am a medical doctor, licensed to practice in the State of California and have been

21   in practice in the State of California since 1993. M. PAUL COPANSKY is a patient of mine and

22   has been a patient since 1996.

23       2.      This Declaration is made in support of the Motion of PAUL COPANSKY and THE

24   DIAMOND CENTER on a Motion for New Trial.

25       3.      On September 29, 2002, I was advised of the medical condition of PAUL

26   COPANSKY by his wife who reported to me that PAUL COPANSKY was confused, sweating,

27                                          1

28   _____
     DECLARATION OF LOWELL KLEINMAN, M.D. IN SUPPORT OF MOTION FOR NEW TRIAL

002551

1   breathing irregularly and completely incoherent at times. I advised Mrs. COPANSKY to have Mr.

2   COPANSKY go to the emergency room.

3         4.     I received a report from the emergency room physician indicating that Mr.

4   COPANSKY had arrived at the emergency room.

5         5.     I subsequently went to the emergency room and examined Mr. COPANSKY. Mr.

6   COPANSKY was confused, agitated and not responding logically to my questions.   Mr.

7   COPANSKY proceeded to have a cat scan of his head and I made arrangements for another doctor

8   to admit him.

9         6.     On September 30, 2002, the day after his admission to the hospital, Mr.

10   COPANSKY came to my office. He appeared confused, disoriented, and had an IV line dangling

11   from his arm. When I queried him regarding what he was doing, he spoke incoherently and left

12   my office despite my attempts to contact his wife and make arrangements for him to be taken back

13   to the hospital.   I subsequently learned that although he went back to the hospital, Mr.

14   COPANSKY then signed himself out against my medical advice.

15         7.     Based upon my observations of Mr. COPANSKY at the time and my knowledge

16   of his health condition, I believe Mr. COPANSKY'S life was in danger at that time, and expressed

17   that opinion to a Judge and assembled attorneys by way of a telephone call to the Judge's

18   chambers.

19         8.     Based upon my observations of Mr. COPANSKY at the time and my knowledge

20   of his medical history, I concluded that Mr. COPANSKY was incapable of appreciating the

21   situation he was in at the time and did not have the ability to protect himself or to deal wit the

22   matters occurring in court. I believe I made this statement or words to the same effect, to the

23   Judge and the attorneys in a telephone call to the Judge's chambers.

24         9.     At the time I observed Mr. COPANSKY on September 29, 2002, Mr. COPANSKY

25   did not appear capable of knowing, understanding or comprehending what was occurring about

26   him, had no appreciation for his grave medical condition, could not appreciate the dangers to his

27                                    2

28   DECLARATION OF LOWELL KLEINMAN, M.D. IN SUPPORT OF MOTION FOR NEW TRIAL

1  health by continuing at trial, and did not have the mental ability to know or comprehend the events

2  occurring about him sufficiently to protect himself.

3       I declare under penalty of perjury under the laws of the State of California that the

4  foregoing is true and correct, and that this declaration was executed on November ___, at

5  Danville, California.

6

7

8  LOWELL KLEINMAN

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                      3

28
_____
DECLARATION OF LOWELL KLEINMAN, M.D. IN SUPPORT OF MOTION FOR NEW TRIAL

1
2
3
4

BARTLETT, LEADER-PICONE & YOUNG, LLP
ROBERT S. BARTLETT (STATE BAR NO. 79752)
MALCOLM LEADER-PICONE (State Bar No. 104620)
2201 BROADWAY, SUITE 803
OAKLAND, CA 94612
TELEPHONE: (510) 444-2404
FACSIMILE: (510) 444-1291

5
6

Attorneys for Plaintiff/Judgment Creditor
PHIL LINZA

7
8
9

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF CONTRA COSTA

10
11

MARTINEZ BRANCH

12

PHIL LINZA,

13                    Plaintiff,

14        vs.

15  THE DIAMOND CENTER, INC., fka
    COPANSKY ENTERPRISES, INC., a
16  corporation; PAUL COPANSKY, an
    individual

17                    Defendants.

18

19

)  No. C01-01898
)
)  **ORDER PROHIBITING COPANSKY**
)  **FROM SEEKING ANY FURTHER**
)  **RELIEF ON AN EX PARTE BASIS.**
)
)  Date:  January 29, 2008
)  Time:  1:30 p.m.
)  Dept:  60
)
)
)

20                              ORDER

21        Upon the *ex parte* application of judgment creditor for an order prohibiting defendant

22  and judgment debtor Paul Copansky from bringing any further *ex parte* applications in this case; and

23  pursuant to the Court's inherent authority under Code of Civil Procedure section 128, subdivision

24  (a)(5), to "'control in furtherance of justice, the conduct of its ministerial officers, and of all other

25  persons in any manner connected with a judicial proceeding before it, in every matter pertaining

26  thereto'" (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th

27  1135, 1145); and for good cause appearing,

28  ////

---

ORDER PROHIBITING FURTHER *EX PARTE* APPLICATIONS
-1-                                              Case No. C01-01898

002189



Robert B. McAleese, Ph.D.
1431 43rd Street
Sacramento, CA  95819
(916) 453-0705

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF CONTRA COSTA

PHIL LINZA,

      Plaintiff

vs.

M. PAUL COPANSKY,
COPANSKY ENTERPRISES, INC.,
and DOES 1 through 20, inclusive.

      Defendants

Case No.: C01-01898

DECLARATION IN SUPPORT OF MOTION FOR MISTRIAL

I, ROBERT B. MCALEESE, Ph.D., L.E.P., **declare**:

1.      This declaration is made in Support of the Motion of Defendant Paul Copansky for Mistrial.

2.      I am over the age of eighteen years, have personal knowledge of the matters stated herein, am competent to testify thereto and will so testify if called as a witness.

3.      Notes about Paul Copansky and his disorder, ADHD:

Paul suffers from Attention-Deficit/Hyperactivity Disorder as defined in the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV).  His specific diagnosis is 314.01 Attention-Deficit/Hyperactivity Disorder, Combined Type.

His case is severe and chronic.  His case is the most severe I've witnesses in my 29 years of dealing with clients with this disorder.  As a result, Dr. Landman in Orinda, California has prescribed unusually high amounts of psychostimulant medications in an attempt to ameliorate his symptoms.

**Paul Copansky is in no way competent to represent himself or The Diamond Center in a court of law for numerous reasons:**

- He lacks the working memory and recall necessary to actively process information;
- He is unable to hold courtroom facts and developments in his mind while trying to organize the material into a cogent response;
- He is slow to respond to interactions and will easily lose his train of thought;
- He will have difficulty staying alert and paying attention especially if he forgets to take his medication or as his medication reaches a trough level in his blood serum;
- He will respond impulsively without adequate forethought inhibiting his actions;

- He is likely to demonstrate low frustration tolerance and might have emotional blowups in the courtroom distancing a judge or jury, or he is likely to become overwhelmed and suffer severe stress-related symptoms.

- He lacks the ability to use "self-talk" to direct his future actions;

- And finally, he lacks the ability to take an issue apart, analyze the pieces and organize it into new ideas.

These are the most applicable, but in no way complete list of reasons why Paul should not represent himself in court.

    4.    In regard to myself, I have worked with ADHD clients since 1963. I have worked with them in a state mental hospital, probation, education and private practice environments. I directed the Attention Deficit Disorder Institute in Walnut Creek, CA for several years where I counseled clients, advocated for them within academic and employment worlds and conducted seminars and staff training on ADD within the state. I currently work for a private Catholic school where I chair their Counseling Department and am in charge of services for students with disabilities such as ADHD. I have a Ph.D. degree and am a licensed educational psychologist and marriage and family therapist. I am credentialed in psychometry and school psychology.


I declare the foregoing is true and correct and that this declaration is executed October 6, 2002 at Sacramento, California.

Robert B. McAleese, Ph.D., L.E.P.

Subj:    **Copansky CRUT/Retirement account**
Date:    4/17/2008 10:43:47 A.M. Pacific Daylight Time
From:    Debra.Lepold@uboc.com
To:      userpndc@aol.com

Hi Paul,
Confirming our conversation today, to date the following payments were made to the Bartlett firm pursuant to the Court Order:

01/28 CASH DISBURSEMENT                    29,619.61-
   PAID TO   BARTLETT, LEADER-PICONE & YOUNG, LLP
   PMT FOR BENEFIT OF BENEFICIARY
   R/T214 PAYMENT PER COURT ORDER

02/25 CASH DISBURSEMENT                    29,619.61-
   PAID TO   BARTLETT, LEADER-PICONE & YOUNG, LLP
   PMT FOR BENEFIT OF BENEFICIARY
   (RT213) PAYMENT PER COURT ORDER NSKY

04/03 CASH DISBURSEMENT                    29,619.61-
   PAID TO   BARTLETT, LEADER-PICONE & YOUNG, LLP
   PMT FOR BENEFIT OF BENEFICIARY
   ATTNY-CLNT TRT ACCT PAY PER CRT ORDER - COPANSKY

Pursuant to my conversation with Bartlett, the final payment of $8,277.89 will be made on 4/25/08.

I confirmed with Roy Cote that the payment from the retirement account in the amount of $1,654.51 was made on 5/21/07.

Regards,


Debra P. Lepold
Vice President & Regional Mgr.
UNION BANK OF CALIFORNIA, NA
Palo Alto Trust Office
400 University Avenue
Palo Alto, CA 94301
650 859-1228 direct
650 859-1201 fax


*****************************************************************************
This communication (including any attachments) may contain privileged or confidential information intended for a specific individual and purpose, and is protected by law.  If you are not the intended recipient, you should delete this communication and/or shred the materials and any attachments and are hereby notified that any disclosure, copying, or distribution of this communication, or the taking of any action based on it, is strictly prohibited.

Thank you.

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address):
Robert S. Bartlett  (State Bar # 79752)
Bartlett, Leader-Picone & Young, LLP
2201 Broadway, Suite 803
Oakland, CA 94612
TELEPHONE NO.: (510) 444-2404    FAX NO.: (510) 444-1291
ATTORNEY FOR (Name): Phil Linza, Plaintiff

AT-138, EJ-125

FOR COURT USE ONLY

1180u5 -ASU

F I L E D

JUN 1 3 2007

K. TORRE, CLERK OF THE COURT
SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF CONTRA COSTA
By **D. WAGNER**
Deputy Clerk

NAME OF COURT: SUPERIOR COURT OF CALIFORNIA, COUNTY OF CONTRA COSTA
STREET ADDRESS: 725 Court Street
MAILING ADDRESS: P.O. Box 911
CITY AND ZIP CODE: Martinez 94553
BRANCH NAME: Martinez

PLAINTIFF: Phil Linza

DEFENDANT: The Diamond Center, Inc., fka Copansky Enterprises, Inc., a corporation, et al.

| APPLICATION AND ORDER FOR APPEARANCE AND EXAMINATION | CASE NUMBER: |
|---|---|
| [X] ENFORCEMENT OF JUDGMENT    [ ] ATTACHMENT (Third Person)<br>[ ] Judgment Debtor   [X] Third Person | C01-01898 |

## ORDER TO APPEAR FOR EXAMINATION

1. TO (name): Susan Dehner Scribner, Vice President & Senior Trust Officer, Union Bank of California
2. YOU ARE ORDERED TO APPEAR personally before this court, or before a referee appointed by the court, to
   a. [ ] furnish information to aid in enforcement of a money judgment against you.
   b. [X] answer concerning property of the judgment debtor in your possession or control or concerning a debt you owe the judgment debtor.
   c. [ ] answer concerning property of the defendant in your possession or control or concerning a debt you owe the defendant that is subject to attachment.

   Date: August 10, 2007    Time: 9:00 a.m.    Dept. or Div.: 60    Rm.:
   Address of court [X] shown above [ ] is:

3. This order may be served by a sheriff, marshal, registered process server, or the following specially appointed person (name):

Date: **JUN 1 3 2007**

JUDITH A. SANDERS
JUDGE OR REFEREE

This order must be served not less than 10 days before the date set for the examination.

## IMPORTANT NOTICES ON REVERSE

## APPLICATION FOR ORDER TO APPEAR FOR EXAMINATION

4. [X] Judgment creditor  [ ] Assignee of record  [ ] Plaintiff who has a right to attach order
   applies for an order requiring (name): Susan Dehner Scribner, Vice President & Senior Trust Officer, Union Bank of California    to appear and furnish information
   to aid in enforcement of the money judgment or to answer concerning property or debt. (Court award of attorney fee against Paul Copansky)

5. The person to be examined is
   a. [ ] the judgment debtor.
   b. [X] a third person (1) who has possession or control of property belonging to the judgment debtor or the defendant or (2) who owes the judgment debtor or the defendant more than $250. An affidavit supporting this application under Code of Civil Procedure section 491.110 or 708.120 is attached.

6. The person to be examined resides or has a place of business in this county or within 150 miles of the place of examination.

7. [ ] This court is not the court in which the money judgment is entered or (attachment only) the court that issued the writ of attachment. An affidavit supporting an application under Code of Civil Procedure section 491.150 or 708.160 is attached.

8. [ ] The judgment debtor has been examined within the past 120 days. An affidavit showing good cause for another examination is attached.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: June 6, 2007

Robert S. Bartlett
(TYPE OR PRINT NAME)

▶

(SIGNATURE OF DECLARANT)

Form Adopted for Mandatory Use
Judicial Council of California
AT-138, EJ-125 [Rev. July 1, 2000]

(Continued on reverse)

APPLICATION AND ORDER
FOR APPEARANCE AND EXAMINATION
(Attachment—Enforcement of Judgment)

Code of Civil Procedure,
§§ 491.110, 708.110, 708.120

1    BARTLETT, LEADER-PICONE & YOUNG, LLP
     ROBERT S. BARTLETT (State Bar No. 79752)
2    2201 BROADWAY, SUITE 803
     OAKLAND, CA 94612
3    TELEPHONE: (510) 444-2404
     FACSIMILE: (510) 444-1291
4
     Attorneys for Plaintiff
5    PHIL LINZA

6

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              COUNTY OF CONTRA COSTA, MARTINEZ DISTRICT

10   PHIL LINZA,                          )  No. C01-01898
11              Plaintiffs,               )
                                          )  NOTICE IN LIEU OF SUBPOENA
12   vs.                                  )  REQUESTING PRODUCTION OF
                                          )  DOCUMENTS - CCP §1987(c)
13   THE DIAMOND CENTER, INC., fka        )
14   COPANSKYK ENTERPRISES, INC., a       )  DATE  : August 10, 2007
     corporation; PAUL COPANSKY, an       )  TIME  : 9:00 a.m.
15   individual,                          )  DEPT. : 60
                                          )
16              Defendants.               )

17   _____

18   TO:  SUSAN DEHNER SCRIBNER, Vice President & Senior Trust Officer, Union Bank of

19   California:

20              Request is hereby made that the party to the above-entitled action bring with her on

21   August 10, 2007 at the hour of 9:00 a.m. to the place of the hearing, SUPERIOR COURT OF

22   CALIFORNIA, COUNTY OF CONTRA COSTA, 725 Court Street, Martinez, California, the

23   following documents and records from the entity known as the Copansky Charitable Remainder Trust

24   (this Notice in Lieu of Subpoena requesting production of documents requests documents from all

25   branches in the State of California of Union Bank of California).

26         1. Copy of the Copansky Charitable Remainder Trust.

27         2. Copy of any amendment to the Copansky Charitable Remainder Trust.

28         3. Copy of any addendum to the Copansky Charitable Remainder Trust.

_____
Notice in Lieu of Subpoena Requesting Production of Documents
                              -1-

4. Copy of any and all documents appointing the Union Bank of California, as Trustee of the Copansky Charitable Remainder Trust.

5. Copies of any and all documents describing the duties of Union Bank of California as Trustee of the Copansky Charitable Remainder Trust.

6. Copies of all check registers, cancelled checks, bank statements, deposit slips, passbooks, Certificates of Deposit, letters of credit, safe deposit boxes, travelers checks and cashier's checks acquisition records, wire transfer documents and any other documents reflecting deposits, withdrawals and exchanges of funds at Union Bank of California owned by, controlled by or directed by Paul Copansky, whether in his sole name or in joint name with any other person or entity, including, but not limited to, the Copansky Charitable Remainder Trust, for all accounts.    Such accounts shall include, but not be limited to, accounts maintained directly, indirectly or for the benefit of Paul Copansky, whether in his sole name, or in joint name with any other person, entity or partnership, or otherwise in the name of any trust listed above. Such documents shall be limited to all and all documents dated after January 1, 2006.

7. Copies of all check registers, cancelled checks, bank statements, deposit slips, passbooks, Certificates of Deposit, letters of credit, safe deposit boxes, travelers checks and cashier's checks acquisition records, wire transfer documents and any other documents reflecting deposits, withdrawals and exchanges of funds at Union Bank of California owned by, controlled by or directed by Paul Copansky, whether in his sole name or in joint name with any other person or entity, including, but not limited to, the Copansky Charitable Remainder Trust, with regard to which Paul Copanksy receives correspondence or statements at any address whether or not he is listed as the owner of said accounts. Such documents shall be limited to all and all documents dated after January 1, 2006.

8. Copies of all check registers, cancelled checks, bank statements, deposit slips, passbooks, Certificates of Deposit, letters of credit, safe deposit boxes, travelers checks and cashier's checks acquisition records, wire transfer documents and any other documents reflecting deposits, withdrawals and exchanges of funds at Union Bank of California owned by, controlled by or directed

1  by Paul Copansky, whether in his sole name or in joint name with any other person or entity,
2  including, but not limited to, the Copansky Charitable Remainder Trust, with regard to which Paul
3  Copansky is a signatory whether or not he is listed as the owner of said accounts. Such documents
4  shall be limited to any and all documents dated after January 1, 2005.

5          9.  All correspondence, notes and memorandums from and to, or regarding, Paul
6  Copansky, whether or not in his sole name or in the joint name with any other person or entity,
7  specifically the Copansky Charitable Remainder Trust, which is/are in the custody, possession, or
8  control of the witness responding to the Notice In Lieu of Subpoena Requesting Production of
9  Documents.

10         For purposes of clarification the following words are defined:

11         a.  "Document", as used herein, refers to notes, receipts, memoranda, letters, telegrams,
12  telexes, cable, reports, studies, analyses, charts, tables, tabulations, compilations, summaries,
13  contracts, indices, abstracts, recording, tape recordings, telephone logs, records and entries, drawings,
14  blueprints, labels, tags, pleadings, testimony, speeches, articles, books, pamphlets, brochures,
15  magazines, newspapers, calendars, diaries, minute orders, e-mails, photographs, moving pictures,
16  microfilm, electronic, wireless and computer entries, computer printouts, advertisements and
17  memorials of oral communications (whether by telephone or face to face), including originals, as well
18  as non-conforming copies, no matter how prepared, in your actual or constructive possession, custody
19  or control, or in the actual or constructive possession, custody or control of your agents or attorneys.

20         b.  "Person", as used herein, refers to any natural person, governmental entity, agency,
21  commission, authority, or representative thereof, firm, corporation, partnership, association, joint
22  ventur or other form of legal entity, and shall be deemed to mean in the plural as well as in the
23  singular.

24         c.  "Correspondence", as used herein, refers to letters, telegrams, telexes, cables,
25  ////
26  ////
27  ////
28

1  memoranda, faxes, notes or other writings mailed, delivered or otherwise transmitted to any person, as

2  person is defined herein including by electronic means.

3  DATED: _____, 2007        BARTLETT, LEADER-PICONE & YOUNG, LLP

4

5                                      BY: _____

6                                           ROBERT S. BARTLETT
                                             Attorney for Plaintiff PHIL LINZA

7

8                        POINTS AND AUTHORITIES

9            California Code of Civil Procedure §1987 (c): Service of Notice in Lieu of Subpoena

10  for Production of Documents.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Paul Copansky
724 Blue Spruce Drive
Danville California 94605
Telephone: (925) 736-8705
Email-userpndc@aol.com

Plaintiff-in Pro-Per

# EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 TO VOID JUDGEMENT IN THE UNITED STATES DISTRICT COURT FOR THE (*OAKLAND*) NORTHERN DISTRICT OF CALIFORNIA

Paul Copansky

**Plaintiff**

**V**

Phil Linza, Martin Horowitz, Stephaine Rubin-off , and Horowitz-,Rubin-off

**Defendants**

**MOTION TO VOID JUDGEMENT RENDER UPON FRAUD, DISABILITY AND DUE PROCESS VIOLATIONS:**

**PLAINTIFF NEEDS  RELIEF TODAY TO AVOID IRREPARABLE HARM**

1

## CIRCUIT RULE 27-3 CERTIFICATE

I, Paul Copansky, In Pro-Per, Complied With The Requirements Governing
Emergency Motions, And Hereby Certify The Following Information In
Accordance With Circuit Rule 27-3

**(I)** The telephone numbers and office addresses of the attorneys for the
parties are as follows:

> Paul Copansky, Plaintiff
> 724 Blue Spruce Drive
> Danville California 94605
> Telephone:    (925) 736-8705
> Email-  userpndc@aol.com

> **Plaintiff,** In Pro-Per


> Martin Horowitz
> Stephanie Rubinoff
> 1440 Broadway, Suite 607
> Oakland, CA  94612
> Phone: (510)   444-7717
> Fax-    (510)   444-6109


> **Attorneys**  for Defendant, Phil Linza

2

## STATEMENT OF ISSUES

Paul Copansky Founder of The Diamond Center (TDC) and The Diamond Center itself were sued by Phil Linza. a former employee in 2002.The jury ruled for Linza and a $300,000 breach of contract dispute turned into a $3,100,000 million judgment against Copansky who is the Plaintiff and Appellate in this case

Copansky who happened to have (**ADD**) Short for Attention Deficit Disorder believed with help of his medication, his witnesses and his own testimony, he could represent himself successfully at trial. That was a tragic mistake as the Trial Judge, Terrence Bruiniers had no respect or patience with Pro-Per parties.

After the trial was over, Judge Bruiniers declared he was close to being an expert on Attention Deficit Disorder due to his own child was diagnosed and treated for this disorder. **Immediately** after Copansky told the court he had (**ADD**) on September 27, 2002, the Trial Bruiniers showed an intense dislike for him. The decisions and rulings Judge Bruiniers made after Copansky told him he had the same disability as his child, created most of the Appeal issues and reasons the judgement against Copansky should be declared Void by this court.

### The Key Issues Are As Follows.

**1.** Judge Bruiniers Falsified his findings of facts statement that Appellate Court used as undisputed facts to reject defendants arguments and appeal for new trial.

**2.** Judge Bruiniers Falsified the Record in Undisclosed Ex-Parte Communications with Plaintiffs. During those discussions, Court ordered trial to continue and allowed jury to hear plaintiff' and his expert witness testimony, in the absence of Copansky, who was in the hospital for fear he had a stroke .

**3.** Judge Bruiniers concealed his knowledge that Copansky life was at risk and obstructed justice by forcing him to continue representing himself.                ,

**4.** Judge Bruiniers Intentionlly Deprived Defendants of a Opportunity to Present their case to the Jury by Arbitrarily Reducing Copansky Time to Testify in Half.

3

**5**. Plaintiff Phil Linza his  Attorneys  and witnesses, committed  perjury and fraud in excess of 50 times to obtain compensatory and punitive damages against Defendants. Has time  expired  for  Copansky  to  seek  relief  from  a  judgement rendered upon  Fraud and due process violations?

**6.** The Punitive Damages Assessed against Copansky was in violation of the constitution as it exceeded 70 Percent of his Net Assets and based upon Extrinsic Mistakes and Fraud.

**7.** Judge Bruiniers knew Copansky disability symptoms were to serious for him to continue representing himself and **violated** the Americans with Disabilities Act of 1990 ("ADA") by denying Copansky request for a  continuous to retain counsel.

**8.** Judge Bruiniers perjured himself in his declaration response to Copansky motion to recuse him. The court records strongly indicates Judge Bruiniers also has Attention Deficit Disorder.

The judgment against The Diamond Center and Paul Copansky was unjust and in violation of the Americans with Disabilities Act and Fourteenth Amendment of the U.S. Constitution.

   **NOTE:** The Diamond Center dissolved, with no assets in 2004.

4

## 3-5. JURISDICTIONAL STATEMENT

**(a) Jurisdiction..**

A judgement was entered against Paul Copansky and The Diamond Center Corporation at the Superior Court in Contra Costa County on 10-23-2002 and affirmed 12-30-2005 by California First Appellate District Court. The Remittitur was sent back to lower court and case completed after Paul Copansky motion to vacate the judgement was denied on 8-25-2006.

**1.** This Court's jurisdiction is invoked pursuant to 28 U.S.C. 1331. The U.S. District Courts have jurisdiction of all civil actions arising under the Constitution of the United States.

**2.** This Court has jurisdiction pursuant to District Courts have jurisdiction of any civil action pursuant to 28 U.S.C. § 1343 (a)(3) for redress of the deprivation, under color of State law or statute, of rights, privileges, or immunities secured by the United States Constitution

**3.** This court has jurisdiction, pursuant to 42 U.S.C. § 1983 for deprivation of rights, privileges and immunities secured by the Second, Fourth, Fifth, and Fourteenth Amendments of U.S. Constitution.

**4.** This Court's jurisdiction is invoked pursuant to California law an order or judgment rendered in violation of parties due process rights are void..

### (b) INTRA DISTRICT ASSIGNMENT

This action was filed in this court due to Defendants attorneys law offices are located in Oakland California. Plaintiff home is in Danville CA. and Defendant lives in Fairfield CA.

5

## STATEMENT OF FACTS

Paul Copansky founded The Diamond Center in 1974, and opened his 1st store in Oakland California. Over time, The Diamond Center succeeded in growing from one store into a 8 store jewelry chain, employing 90 people with annual sales exceeding $10 Million  (**RT** 912:28-913:4.)

Copansky interviewed Phil Linza for a sales position in 1990, but had concerns over his pattern of filing lawsuits against his prior employers in the jewelry industry. Linza sued the Shane Company **after** they fired  him for insubordination (RT 296:14-16.)Linza filed a complaint against his next employer, Crescent Jewelers, claiming they failed to pay him a bonus. (RT 294:22-26; 914:5-915:5.)

**Nevertheless,** Copansky not only hired Linza, but personally mentor and trained him into management and later promoted him to a field supervisor.  They became good friends, as Copansky was best man at Linza's wedding.. (RT 916:23-917:5.) This  close  relationship  became  apparent  later,  when  Copansky    refused  to terminate him, despite Recommendations he should do so.  (RT 820:2-11.)

After managing  TDC  for over two decades and working 70-80 hours per week for most of those years, Copansky felt, it was time to retire, and spend quality time with his wife, and enjoy their retirement years together.  (RT 918:3-10.)

**Copansky surprised** Linza and other members of his long term Management Team, with a hand written, bonus Incentive opportunity, with three qualifying conditions on February 7, 1999. The Conditions were the following:

1  Must be employed with The Diamond Center on March 15, 2001

**2**.  Must be "in good standing" as of March 15, 2001, or when company is sold;

**3**.  Must be willing to continue their employment for two years, with the new owners if they want them on their team.  (**RT** 792:21-27.)Linza had an opportunity to make a ($300,000)  bonus, if he was in good standing  as of March 15, 2001.

Copansky rewarded his team, to show appreciation for their respect and loyalty they gave him, throughout the years, Copansky also wanted the feeling of pride and satisfaction he did well by them, as their mentor on his way out, as The Diamond Center's founder /CEO. Therefore, the 3 conditions were not tied into team or company performance. (RT 118:7-15; 919:18-24; 921:16-26.)

Copansky was so sure his team would earned the bonuses, he handwrote a clause in the agreement stating he would pay the legal fees of any person that were not paid their bonus as promise. Cherie Swenson ,Vice President of Operations for over 10 years testified, "Linza performance Severely Deteriorated. in 2000 and advised Copansky to terminate him in December after Linza interfered in her serious investigation of the falsification of employees time cards in a Diamond Center Store. ."

Linza testified Copansky told him December 7, 2000 he was no longer a good employee and needed an attitude readjustment. Charles Schnelle a member of the Management team testified, an ugly incident occurred between Linza and himself in December of 2001.Linza called a Diamond Center representative who denied his customer application for credit and verbally abused this female employee until she was in tears and gave the phone to Schnelle, her boss. (RT 737:3-738:14.) Linza told Schnelle, "I'll do your job for you," and hung up on him." Schnelle, said, there was no reason for it and Linza was short-tempered,"(RT 738:15-24.)

On March 8, 2001, TDC Controller told Copansky, she discover Linza had made hundreds of phone calls to a 800 number. Copansky called the number and found Linza calls were going to an out of state bookmaking operation. The Controller did another audit that disclosed, Linza had made **Over One Thousand Calls** to that 800 number, during his working hours, and on The Diamond Center 's cell phone, which was in clear violation of the company 's written policy.

7

Copansky expected to sell the company with-in weeks and would have been defrauding the investors if he hid Linza 's acts of misconduct. Copansky terminated Linza March 14, 2001.

When this case went to trial in 2002, **Linza testified** he hired his attorneys Martin Horowitz and Stephanie Rubinoff eight months before he was terminated and they filed a complaint, against Defendants in July of 2001.

Linza claimed that Copansky knew about his gambling calls and terminated him to avoid paying his bonus due the next day. Linza alleged that Copansky had a business practices of cheating his employees. Linza testified Copansky would instruct him to do audits in TDC stores and document employees mistakes so he could fire them or reduce their salary. Linza contended Copansky abused him in 2000 by forcing him to work 12 hours a day, 7 days a week.

Linza and his key witness Ed Spears testified Copansky failed to do any TV advertising from February to October 2000. It was the first time TDC was off the air in 15 years. Copansky failed to create sales contests, do promotions of any kind in the complete year of 2000 Copansky failed for over a year to implement selling warranties to customers for added revenue. **The jury believed Linza,** and his witnesses version of the facts.

The majority of the facts cited above, are excerpts from Copansky and The Diamond Center 's Appellate Opening Brief, which is Attached as an exhibit.

## LEGAL ARGUMENT

## I JUDGEMENT IS VOID AS IT WAS RENDERED UPON FRAUD AND IN VIOLATION OF COPANSKY DISABILITY AND DUE PROCESS RIGHTS

Attached as exhibit **(1)** is Judge Bruiniers January16, 2003 statement of facts, opinions and conclusions for denying TDC and Copansky motion for a new trial. Attached as Exhibit **(2)** is the 33 page Opinion Report of the California First Appellate District Court that affirmed the judgement in full on 12-30-2005.

The facts below will show the Appellate Court made an extrinsic mistake by treating the trial courts facts and conclusions as their Undisputed facts in their 33 page report as the reasons to reject defendants arguments and appeal for new trial.

## A JUDGE BRUINIERS UNDISCLOSED EX-PARTE DISCUSSIONS WITH PLAINTIFFS CONSTITUTE GROUNDS TO VOID THE JUDGEMENT

The Court had Ex-Parte Communications with Plaintiffs without notice or disclosure to Copansky. That deprived Copansky of his legal and Constitutional rights. Not only are any orders issued under said situations null and void, of no legal force or effect, but they further evidence judge(s) who participate in secret ex-parte hearings have not acted impartially, and violated their oath of office

**The 1st Ex parte Communications Took Place Monday, September 30, 2002**

The Court told Lee (Bard) Short for Bardellini, The Diamond Center attorney and Plaintiffs Counsel, Mrs Copansky left messages saying her husband was at the Hospital yesterday and kept there for medical tests this morning.." (RT 611:4-12)

**Court:** I have not heard anything further from the hospital or have any medical reports on his condition. Quite candidly I had assumed when Copansky was unable to get a continuance at trial, Copansky would check himself into the hospital." Bard: I'm sorry your Honor, he has done that? Court: **"No**: (RT 611-28: 612:12

9

**Recap Of Facts Above:**

**a** . The Court only assumed Copansky checked  himself into the hospital

**b**. When Bardellini asks the Court directly if Copansky checked himself into the hospital. The Court response was **No:**

**c**. **Court:** I have not heard anything further from the hospital or have any medical reports on Copansky condition." Therefore, Judge Bruiniers had no evidence or facts to support his assumption that Copansky checked  himself into the hospital .

**Additional Excerpts From The 1ˢᵗ Ex parte Communications**

**Court:** " I assumed when Copansky was unable to get a continuance at trial, given the fact, he sent letters to the court earlier in this matter, talking about his inability to go to trial because of stress and his prior heart condition, Copansky would at some point check himself into the hospital.(RT 611-28: 612:12)

**1 JUDGE BRUINIERS WITHOUT CONSCIENCE DEFAMES COPANSKY CHARACTER BY MAKING NINE PERJURED STATEMENTS IN A ROW**

**Court:** "Copansky sent letters to the Court prior to the time, this was last set for trial and indicated because of his heart attack and stress of preparing for this matter, he would be unable to go to trial..The last time we actually set it for trial, Copansky was here and indicated he would appear. Because I told him if his Medical condition  was such, he could not represent himself, he have to get counsel (RT 612: 14-23) Because  of the prior correspondence, I assumed when the motion to continue was denied, this would be a likely occurrence, at some point, during the trial. So, until and unless, I have medical verification of Copansky 's  condition,  I have to say it's at least suspect." (RT 612:24-613:1)

**2.    JUDGE BRUINIERS CREATES A RECORD OF FALSE FACTS**

Allan Is-bell, Defendants prior counsel, sent a two page letter, dated May 2, 2002, to Martin Horowitz, Linza attorney. Letter is Attached as Exhibit **(3)** Is-bell Letter Confirms The Following:  Horowitz agreed to postpone witnesses depositions until Copansky returned from out of state to California on May 15, 2002. Horowitz supported Is-bell filing an Ex-Parte motion for continuance, from July 15, 2002, to

10

September 16, 2002. Is-bell filed that motion on May 10, 2002, 5 days before
Copansky returned to California.

Judge Bruiniers not only granted Is-bell motion, but set the trial date for
September 23, 2002, one week longer then Is-bell requested in his motion. Judge
Bruiniers was so obsessed with destroying Copansky credibility he forgot anyone
could discover his deceit by reviewing the Procedure History of this case.

### Procedure History

Linza filed a complaint against Defendants May 16, 2001. The Trial initially was
set for May 13, 2002 but continued to July 15, at Case Management Conference
on January 11, 2002 (CT 40-54.) Allan Is-bell The Diamond Center 's 2nd counsel
obtained a continuance of the July 15, 2002 trail date to September 23, 2002 on the
basis of his recent retention as defendants counsel.(CT 71-78; CT 102-105

### Recap Of Facts Above

Copansky never filed any motions for a continuance, because of his prior medical
problems or for any other reason. Copansky never filed any motions for continuous
prior to the trial that were denied by Judge Bruiniers or any other Judge. Copansky
never sent letters to the court earlier in this matter talking about his inability to go
to trial because of stress and his prior heart condition. Judge Bruiniers never told
Copansky if his medical condition was such that he could not represent himself, he
would have to get counsel. There were no prior letters or correspondence from
Copansky to the Court.

### 3 THE APPELLATE COURT TREATED JUDGE BRUINIERS PERJURED STATEMENTS AS UNDISPUTED FACTS TO AFFIRM JUDGEMENT

Judge Bruiniers Perjured Statements above, resulted in Copansky Character
and Credibility Being Tainted With Appellate Court.

(Appellate Opinion: P-21) Copansky sought a continuance of the trial date on
the grounds of his medical condition but later stated he would be able to appear.
The court stated that it was reluctant to go forward in Copansky's absence until it
had more information about his condition, but also stated Copansky's history

11

rendered the reports of his medical condition to be "at least suspect."

## 4   COURT RULED NOT TO CONTINUE TRIAL WITHOUT COPANSKY

**Bard:** "Copansky doctors are concerned, he had a stroke." Copansky is a very necessary key witness and without him, it would be impossible to put on a case at all." Bard then requested a short continuance to ascertain Copansky medical condition. (RT-613:2-21 )Horowitz disagreed and argued, Bard should proceed with Examination of witnesses without Copansky. He was not a necessary representative (RT-614:18-25)

**Court:** "If Copansky has a legitimate medical condition that prevents his continued participation in the trial, it may be necessary to mis-try his case. At the same time, until I have some medical confirmation as to Copansky condition, I have difficulty going forward in his absence. I guess we can call the San Ramon Medical Center and see if we can get information from a doctor." (RT-615:6-22)

## 5   COURT:   "COPANSKY WOULD NOT HAVE A CLUE ON HOW TO CROSS EXAMINE THE ECONOMIST AND THEN REVERSED RULING

Judge Bruiniers reversed his ruling 30 Seconds after he made it. His very next statement after his ruling was: "I guess the issue is whether we go ahead and put the expert on without Copansky. The expert is an economist? **Horowitz:** correct:
**Court:** "Mr. Copansky wouldn't have a clue how to cross-examine the economist " it does appear to declare a mistrial as to Copansky. I do not see any reason this case could not continue to verdict as to The Diamond Center (RT-615:25: 616:-6)

## 6   COURT:   " YOU MAY BE BETTER OFF WITHOUT COPANSKY "

Bard: "Copansky is a major witness and Only he can address certain factual issues that have been raised by the plaintiff. (RT 616:-8-19) **Court:** You may be better off without him." (RT 616:-24) **Bard:** Your Honor, it sounds like you are going to have the bailiff check with the Medical Center.

**Court:** I do not know. - All we are going to get over the telephone is some verification that he is there." (RT-618:-17-23)

The court then went forward with the trial without checking on the circumstances of Copansky being in the hospital

## 7    COURT HAD 2ND EX-PARTE DISCUSSION WITH DR. KLEIN-MAN

The Court received a call from Dr Klein-man who had information on Copansky medical condition. Judge Bruiniers called a recess, and had attorneys join him in chambers to hear the Doctors report. (RT-663:15-26)

Attached as Exhibit (6) is Dr. Lowell Klein-man declaration, that Bard filed for him in support of TDC Motion for New Trial on 11/18/2002.(CT 2550:25-2551:18)   Dr. Klein-man gave his Professional Assessment of Copansky Medical Condition in his declaration and to Judge Bruiniers and Counsel in a twenty minute Unrecorded Ex parte Communication on Monday, September 30, 2002.

### Summary of Dr. Lowell Klein-man Declaration

Dr. Klein-man was advised of Copansky medical condition by his wife, who said he was breathing irregularly and incoherent. Klein-man directed Mrs Copansky to take her husband to Emergency For Fear He Had A Stroke. (CT 2550:25-2551:8) ( 3497-3498) Appendix.) After he got confirmation from the Emergency doctor, Copansky arrived, he went there to examine him. Copansky was confused and not responding logically to his questions.

On September 30, 2002, the day after his admission to the hospital, Copansky showed up at Dr. Klein-man office confused, disoriented and had an I V dangling from his arm. When Dr. Klein-man question him on what he was doing, Copansky spoke incoherently and abruptly left his office. Dr. Klein-man found out later, Copansky left the hospital, against medical advice. "

Based upon his observations of Copansky, and his knowledge of Copansky medical history especially his near fatal heart attack he suffer in 2000, Dr. Klein-man believed Copansky life was at serious risk and expressed that belief to a judge, and assembled attorneys by way of a phone call to the judges chambers."

13

**Dr. Klein-man asserted**, Copansky was incapable of understanding the serious situation he was in and lacked the ability to protect himself or deal with the matters occurring in court "Copansky just could not understand or comprehend the grave medical condition he was in at that time, and that his life was in real danger if he continued to go forward with the trial." Dr. Klein-man made the same assessment of Copansky life being at risk to the judge he stated in his Declaration.

## B JUDGE BRUINIERS COMMITS ACTS OF JUDICIAL AND CRIMINAL MISCONDUCT BY CONCEALING COPANSKY LIFE WAS IN DANGER AND FALSIFYING THE RECORD DURING EX-PARTE MEETINGS

During the Ex-Parte discussions, the court stated for the record.: We had a 15-20 minute conversation with Dr. Klein-man and put him on the speaker phone with counsel. Dr. Klein-man reported Copansky was admitted into the hospital last night with a diagnosis of verbal aphasia, indicating" Copansky was unable to speak or speak coherently. RT-674-25: 675-8) Dr.Klein-man indicated Copansky episode was psychiatric rather then physiological." It appeared to be a stress reaction.

" From what Dr. Klein-man was telling me, Copansky medical condition and stress tolerance isn't going to change." (RT-675-9-19) As shown below, the Appellate Court used Judge Bruiniers False Statements as inferences or undisputed facts to reach an Erroneous ruling, in favor of Linza.

**(Opinion: P-22)** The court stated for the record, they had a telephone conversation with Dr.Klein-man, who reported Copansky was still hospitalized and having difficulty speaking coherently." Dr. Klein-man believed Copansky symptoms were the result of stress, and as before was recommending Copansky avoid high-stress activities. From what Dr. Klein-man was telling the court, Copansky 's medical condition and his stress tolerance isn't going to change."

**(Opinion: P-24)** "We reject the court abused its discretion by allowing trial to go forward in Copansky absence. Parties do have the right to be present during trial, but they also have the right to be absent. "In addition, the right to be present

14

is waived when "the absence of the party is voluntary. "

"    The only color-able claim defendants have arises from the court's decision to allow examination and cross-examination of Linza 's expert witness on Monday, September 30, after the court received notice Copansky was hospitalized. Copansky, however, while reporting that he was ill, did not seek a continuance. "

**That was untrue:** Copansky gave the court, a motion for a continuance on 10-1-2002, so he could go back to the hospital to take heart tests that were arranged on September 30, 2002. (CT 2080) Copansky stated: "In regards to my health, I shouldn't be here. I'm definitely, um, not right. "I'll do as your honor tells me." (RT 767:3-19)

**(Opinion: P-25)** "It appears Copansky checked himself into the  hospital—a point that did indeed render his claims of incapacity somewhat suspect."

## J  COURT CONCEALED CONCLUSIVE EVIDENCE THAT COPANSKY WAS ORDERED INTO THE HOSPITAL BY TWO MEDICAL DOCTORS

Exhibit **(8)** is page three of the San Ramon medical center emergency Room Doctors report on Copansky, that was given to Judge Bruiniers shortly after the trial was over. **The Report stated,** " Dr. Klein-man contacted the  undersigned during  the patients work-up with whom case was discussed in detailed who has agreed  the patient require admission to the hospital on Sunday, September 29, 2002 for further evaluation of a primarily expressive aphasia.

The Ex parte Meetings consumed 8 pages of trial transcripts. (RT 611:4:619-5) The Appellate Courts reasons for rejecting defendants abuse of discretion argument were clearly erroneous, and entirely based on Judge Bruiniers perjured statements.

## II  COURT STAYED MUTE AND FORCED COPANSKY TO REPRESENT HIMSELF KNOWING  IT WAS IMPOSSIBLE FOR HIM TO SUCCEED

On September 26, 2002, The Court told Copansky the Bailiff indicated you had an issue you wanted to address in chambers. Now is the time to raise the issue.

15

" It is about the exhibits. I mean. its, um---there is no way--- I can,t stand up there and do what I, am doing and not knowing -- I --- I am a pro-per. I can not–

**Court interrupted:** Mr. Copansky, I told you , your representing yourself in a jury trial was a very very foolish thing to do and your experience so far certainly seems to bear that out." It is almost impossible to proceed in this kind of case without having the legal training and knowledge to do so. That was your choice. You live with the consequences. You get no slack for being Pro-Per. "

**A      On September 26, 2002 Copansky Was Emotionly Traumatize**

" I do not want slack. But- - - I mean, how do I get -  I will do the exhibits myself I just got to know how.  What do I have to do - - in other words, I stand up there, he has already agreed to- - - - I mean, this is so - - I  got- - it is like , no weapon.  I mean  its like - - it is my problem.  Ignore me, I am a Pro-Per.  Sorry to take up your time. The Court then recessed for the day at 4:35. p.m

**B      On September 27, 2002 Copansky Admits He Has Mental Disability**

Copansky arrived late at Court  on September 27, 2002 and on the 1st trial break, Judge Bruiniers told him, "This case will go on with or without you:" Copansky replied he got lost, but was not late intentionlly. I have (ADD) No excuse, I have it."( RT:466:5-7) The court did not respond or asked Copansky what (ADD) was, or what (ADD) had to do with him being late.

Judge Bruiniers did not have to asked those questions because he stated October 7, 2002, "I have a child diagnosed and treated for Attention Deficit Disorder. I understand very well what (**ADD**) is all about, what the diagnosis is and what the Complication  may be " (RT 1116 :17-21) Judge Bruiniers had acquire an in-depth knowledge on this disability. It was in-excusable for him to stay silent, opposed to using that knowledge to determine the Seriousness of Copansky disability by asking a few questions. By doing that, the court would have found, Copansky disability symptoms were to serious for him to continue representing himself"

16

Exhibit (9) is Dr. Robert Mac(short for Mc-Aleese) Declaration that was given to Judge Bruiniers on October 7th, 2002. Dr. Mac detailed the severity of   Copansky Disability Symptoms in his declaration and also provided the following facts to the court in his trial testimony on 10-7-2002.

## Excerpts of Dr. MAC Trial  Testimony

"I diagnose Paul Copansky with ADD around  1990 and treated him for 5 years until I moved out of the area" "**Copansky had the Severest [case] of** Attention Deficit Disorder I have ever witnessed in my 29 years of dealing with this disorder " In an effort to manage this psychiatric/medical disorder, for the past 10 years  Copansky has to take a dosage of psycho stimulant medication that is twice the normal dosage, five to seven times a day (about every 2-1/2 hours) ( RT 1183:12 - 1184:6;"CT 2190- 2191.)

**To much stress**, Copansky will psychologically short circuit. If he gets stressed out. his ability to think becomes even less clear." Even medicated, his symptoms include loss of  memory, inability to focus and organize.(CT 2190:19-2191:13 )His condition is at  the worst if he is put into a condition of trying to concentrate. I told Copansky he was not competent, and could not track what was taking place and advised him, to stop representing himself." Copansky situation is very severe as reflected in the amount of medication that he takes. "

**Judge Bruiniers violated,** every due process right a party has in receiving a fair-un-bias trial by staying mute opposed to asking Copansky specific questions to find out the type of **(ADD)** symptoms he had ? Was he taking medication for it ? What happens if he forgets to take his medication ?  etc  etc

Judge Bruiniers Asserted that copansky was very foolish to represent himself in a jury trial because  "It is almost impossible to proceed in this kind of case without having the legal training and knowledge to do so." **Based on that Assessment** being made at the end of the day on September 26, 2002,  Judge Bruiniers knew

17

the moment Copansky said, he had ADD the next day, it was Impossible, **Opposed** to almost impossible, for him to proceed in this case. Judge Bruiniers label Copansky incompetent, and knew he had a serious Disability, but stayed mute and allowed him to continue to be the lead attorney. That constitutes grounds to void the judgement.

## III  JUDGE  BRUINIERS COMMITS PERJURY IN HIS DECLARATION IN RESPONSE TO COPANSKY MOTION TO RECUSE HIM.

Attached as Exhibit (11) is Copansky motion he filed on June 5, 2006 to recuse Judge Bruiniers for Obstruction of Justice, Judicial Misconduct, and for other grounds. Copansky motion to recuse was stricken. However, Judge Bruiniers stated: " given the nature of the allegations, the court has filed a declaration in response." Attached as Exhibit (13) is Judge Bruiniers June, 8 2006 declaration in response to Copansky motion to recuse him filed under the penalty of perjury.

Judge Bruiniers willfully perjured himself by stating in his sworn declaration :

**"Mr. Copansky did  not disclose his ADD until after the trial."**

Judge Bruiniers committed perjury, evidence by the record cited above, that Copansky told the court he had ADD on September 27,2002" Judge Bruiniers lied a 2nd time by stating  (Once this issue was raised, by Copansky, I advised him  ("**I have some familiarity** with ADD issues) based on my daughters diagnosis)

Judge Bruiniers stated October 7, 2002 (he was very familiar with ADD) and understood  what the diagnosis of ADD and what the complication were from Attention Deficit Disorder may be "(RT 1116:17-21)

Judge Bruiniers declaration in response" was only one page that did not respond, address, or dispute  any of Copansky serious allegations that were highlighted in his 42 page motion to recuse him.

19

JS 44 - No. CALIF. (Rev. 4/97)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO.)

**I.(a) PLAINTIFFS**

COPANSKY PAUL

**DEFENDANTS**

BARTLETT ROBERT, PICONE L MALCOLM AND LINZA PHIL

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

CONTRA COSTA

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.   ALAMEDA

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Paul Copansky  in-pro-per
724 Blue Spruce Drive
Danville California 94605

ATTORNEYS (IF KNOWN)

BARTLETT, LEADER-PICONE & YOUNG, LLP
2201 Broadway, Suite 803
Oakland, CA  94612

## II. BASIS OF JURISDICTION (PLACE AN "✓" IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☐ 2 U.S. Government
Defendant

☑ 3 Federal Question
(U.S. Government Not a Party)

☐ 4 Diversity
(Indicate Citizenship of
Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "✓" IN ONE BOX FOR PLAINTIFF

(For diversity cases only)                        AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑1 | ☐1 | Incorporated or Principal Place of Business In This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business In Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. ORIGIN (PLACE AN "✓" IN ONE BOX ONLY)

☑ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transfered from
Another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to
District Judge from
Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "✓" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med Malpractice | ☐ 625 Drug Related Seizure of | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury | Property 21 USC 881 | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 RR & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers | Injury Product Liability | ☐ 650 Airline Regs | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 810 Selective Service |
| Student Loans (Excl Veterans) | ☐ 340 Marine | ☑ 370 Other Fraud | Safety/Health | | ☐ 850 Securities/Commodities/ |
| ☐ 153 Recovery of Overpayment | ☐ 345 Marine Product | ☐ 371 Truth in Lending | ☐ 690 Other | | Exchange |
| of Veteran's Benefits | Liability | ☐ 380 Other Personal | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge |
| ☐ 160 Stockholders Suits | ☐ 350 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt Relations | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | Product Liability | Product Liability | ☐ 730 Labor/Mgmt Reporting & | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization |
| | ☐ 360 Other Personal Injury | | Disclosure Act | ☐ 864 SSID Title XVI | Act |
| | | | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | | | ☐ 790 Other Labor Litigation | | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Empl Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motion to Vacate Sentence | | ☐ 870 Taxes (US Plaintiff or | ☐ 900 Appeal of Fee |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | | Defendant | Determination Under |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing | ☐ 530 General | | ☐ 871 IRS - Third Party | Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | 26 USC 7609 | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☑ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | Statutes |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

## VII. REQUESTED IN
COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☑ NO

**VIII. RELATED CASE(S) IF ANY**    PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

**IX. DIVISIONAL ASSIGNMENT (PLACE A "✓" IN ONE BOX ONLY)** ☑ NORTHERN ☐ SOUTHERN ☐ EASTERN

DATE  4/22/2008   SIGNATURE OF ATTORNEY OF RECORD